RECEIVED

JUL 1 1 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES FIDELITY & GUARANTY COMPANY | CIVIL ACTION NO. 06-895 |
| VERSUS | JUDGE DOHERTY |
| E. L. HABETZ BUILDERS, INC., ET AL | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING ON
## RE-URGED RULE 12(B)(6) MOTION TO DISMISS THIRD-PARTY COMPLAINT

Pending before this Court is a Re-Urged Rule 12(b)(6) Motion to Dismiss Third-Party Complaint [Doc. 36], filed on behalf of the plaintiff, United States Fidelity & Guaranty Company (USFG). The motion is opposed.[1] For the following reasons, USFG's Re-Urged Rule 12(b)(6) Motion is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

A review of the pleadings in this matter reveals the following uncontested facts. On May 31, 2006, USFG filed a petition against defendants, E. L. Habetz Builders, Inc. (Builders), a Louisiana Corporation and its principals, Louisiana residents, Edmund L. Habetz (Edmund) and Cheryl A. Habetz (Cheryl). Builders is actively involved in commercial construction projects, and it attracts jobs by submitting bids to architects and owners based upon specific plans and criteria. If a bid is

---

[1] USFG previously filed a Motion to Dismiss [Doc. 19], which was denied as premature by this Court on December 14, 2006, in view of a potential jurisdictional defect and the possibility of a lack of standing by USFG to seek dismissal of the Third-Party Demand [Doc. 35]. In the Motion *sub judice*, USFG briefed the issues of jurisdiction and standing in addition to the issues it originally urged in its prior Motion to Dismiss. The limited issues of jurisdiction and standing are unopposed. In all other respects, the issues raised in this Motion are the same as the previous motion, and this Court considers defendants' previous opposition [Doc. 24] as the opposition to the motion *sub judice*.

accepted, Builders is required to provide either a performance bond and/or a payment bond. In 1991, Builders, Edmund, and Cheryl, executed a Master Surety Agreement (MSA) with USFG, a foreign company.

Under the MSA: (1) Builders, Edmund, and Cheryl are designated as "undersigned;" (2) "principal" is defined as one or more undersigned or any partnership, association, corporation, or other legal or commercial entity in which undersigned have a substantial material and/or beneficial interest...; (3) "bond' is defined as a "contract of suretyship, guaranty, or indemnity" or "the continuation, extension, alteration, renewal or substitution of such conflict; and (4) USFG is identified as "surety." The MSA provides the following indemnity provisions:

I       (A) This AGREEMENT binds UNDERSIGNED and heirs, personal representatives, successors and assigns thereof, jointly and severally, to SURETY in connection with all BOND(S) heretofore or hereafter executed, provided or procured by SURETY in behalf of PRINCIPAL in any penal sum and in favor of any obligee(s):

                              * * *

III     (A) UNDERSIGNED shall exonerate, indemnify, and keep indemnified SURETY from and against any and all liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY by reason of: (1) SURETY having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT;

        (B) In order to exonerate or indemnify SURETY, UNDERSIGNED shall upon demand of SURETY, place SURETY in funds before SURETY makes any payment; such funds shall be, at SURETY'S option, money or property, or liens or security interests in property. (The amount of such money or property or the value of the property to become subject to liens or security interests, hall be determined by SURETY.)

IV    (A)  The liability of the UNDERSIGNED hereunder shall extend to and include all amounts paid by SURETY in good faith under the belief that: (1) SURETY was or might be liable therefore: (2) such payments were necessary or advisable to protect any of SURETY'S rights or to avoid or lessen SURETY'S liability or alleged liability;

(B)  the liability of UNDERSIGNED to SURETY shall include interest from date of SURETY'S payments at the maximum rate permitted in the jurisdiction in which this AGREEMENT is enforced, or is enforceable;

(C)  the voucher(s) or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer of SURETY shall be prima facie evidence of the fact and extent of the liability of UNDERSIGNED to SURETY.

MSA, at ¶¶ 1-4.  The MSA further provides, "This AGREEMENT shall be liberally construed so as to protect, exonerate, and indemnify SURETY."  MSA at ¶ 9 (emphasis in original).

Pursuant to the MSA, Builders commenced numerous projects over the years; however, two projects, the Eunice Nursing Home and a St. Martinville School project, developed problems that required legal intervention.  Specifically, four legal claims were filed against Builders and USFG.

The first claim against Builders and USFG was brought by Eunice Nursing Home, which filed a claim in arbitration for allegedly defective work by Builders.  Upon notification of the claim and pursuant to the MSA, Builders hired Louisiana attorney William Melancon and Melancon and Associates (collectively, "Melancon") to defend Builders and USFG.  After a mediation was set in the matter, USFG retained another Louisiana attorney, Alberta Adams, of the Krebs, Farley, and Pelleteri law firm (the Krebs firm), to represent the sole interests of USFG.[2]  After Ms. Adams came to believe certain affirmative defenses had not been pled by Melancon on behalf of USFG, she became fully involved with the matter, presented the affirmative defenses on behalf of USFG, and

_____

[2] Melancon continued representing the interests of Builders, while Ms. Adams represented the interests of USFG.

ultimately prevailed in extracting USFG from the matter.  The Krebs firm billed USFG approximately $156,000.00 for services as to this claim.

The second claim against Builders and USFG was related to a demand by "Brown's Drywall," a Builders sub-contractor, for payment for work allegedly done by Brown's Drywall at the St. Martinville School.  Builders again hired Melancon to defend USFG and Builders pursuant to the MSA; however, as noted by Builders, Edmund and Cheryl in their opposition, "something went awry" and USFG was "defaulted and a judgment obtained."  Upon USFG's notice of default judgment, USFG again hired attorney Adams to represent the sole interests of USFG.[3]  Ms. Adams successfully reversed the default judgment and negotiated a settlement of the plaintiff's claims against USFG.  The Krebs firm billed USFG approximately $7,010.00 for services on this claim.

The third claim against Builders and USFG related a demand brought by "Swepco," another Builders sub-contractor, for payment for work allegedly done at the St. Martinville school.  USFG again hired Ms. Adams to litigate USFG's sole interests in the matter.[4]  The Krebs firm has billed USFG approximately $1,464.00 for services on the claim, which was still outstanding as of the date USFG filed its May 2006 complaint.

The fourth claim against Builders and USFG involved a lawsuit by the St. Martin Parish School Board seeking performance on the Payment and Performance Bond.  USFG again retained Ms. Adams to represent only the interests of USFG, who timely filed exceptions and obtained

---

[3]  Melancon continued representing the interests of Builders, while Ms. Adams represented the interests of USFG.

[4]  In the third and fourth claims against Builders and USFG, Ms. Adams represented the sole interests of USFG, while Melancon represented Builders.

dismissal of the claims against USFG in favor of arbitration.[5]  Krebs billed USFG approximately $6,500.00 for services as to this claim.

In September 2005, the Krebs firm, on behalf of USFG, sent a letter to Builders, Edmund, and Cheryl, seeking the repayment of approximately $120,000.00, representing the reimbursement of certain defense expenses incurred by USFG.  Shortly thereafter, Builders discharged Melancon, and Builders, Edmund and Cheryl filed a legal malpractice claim in state court against Melancon for damages.  In the malpractice complaint, Builders, Edmund, and Cheryl alleged the Krebs firm's involvement would not have been necessary but for Melancon's alleged malpractice.  Accordingly, builders, Edmund, and Cheryl argued USFG would not be seeking reimbursement from them for legal fees and expenses had Melancon performed his function as counsel for Builders and USFG.

On May 31, 2006, USFG filed this complaint [Doc. 1] in U.S. District Court against Builders, Edmund and Cheryl, seeking approximately $172,882.33 for attorneys fees expended throughout the course of the legal history and enuring to USFG's benefit, based on the MSA executed by defendants in favor of USFG.  On August 8, 2006, Builders, Edmund and Cheryl filed an Answer and Third-Party Demands [Doc. 12] against Melancon and against the Krebs Firm.

In their Answer, Builders, Edmund, and Cheryl admitted liability for "reasonable costs and expenses including attorney's fees," asserting the defense that "the amount of $172,882.33 is not reasonable under the circumstances."  Builders, Edmund and Cheryl allege in their Third-Party Demand against Alberta Adams and the Krebs firm, that Adams and Krebs were in a *fiduciary*

---

[5] The pleadings and submissions in this matter suggest the efforts of Ms. Adams and the Krebs firm in the fourth claim inured to the benefit of Builders, Edmund, and Cheryl in addition to the benefit of USFG.  Specifically, it appears Ms. Adams filed exceptions in the fourth claim that resulted in the dismissal of the claim against Builders and USFG in favor of arbitration. (*Defendants' Memorandum in Opposition to Motion to Dismiss Third-Party Demand* [Doc. 24], p. 3).

-5-

position as to Builders, Edmund and Cheryl, with respect to the amount of attorney fees charged to USFG. Accordingly, they contend they may "only be liable for what is reasonable under the circumstances."

On October 4, 2006, USFG filed a Motion to Dismiss Defendants' Third-Party Demand [Doc. 19] against Ms. Adams and the Krebs firm, generally asserting the Third-Party Demand was in essence an affirmative defense which had been pled in the Answer filed by Builders, Edmund and Cheryl. USFG argued Builders, Edmund and Cheryl have no claim against Ms. Adams and the Krebs firm for alleged over-billing of USFG in the matters at issue, because such a claim is a personal one to USFG and thus, cannot be raised by defendants. Additionally, USFG argues Builders, Edmund and Cheryl have no privity of contract with the Krebs firm, whose attorney-client relationship extends only to USFG. Accordingly, USFG urges this Court to dismiss the Third-Party Demand against Krebs for failure to state a claim upon which relief can be granted.[6]

In opposition, Builders, Edmund, and Cheryl argue the Krebs firm owes them a *fiduciary* obligation by way of the indemnity agreement in the MSA between Builders, Edmund, Cheryl and USFG. Specifically, Builders, Edmund, and Cheryl argue all parties were aware Builders, Edmund and Cheryl were obligated to reimburse USFG for attorney fees, and the "special circumstance" of "flow through" billing "created upon Krebs a special duty to [Builders, Edmund, and Cheryl] to avoid overkill on the defense of the claims."

---

[6] As noted above and discussed elsewhere herein, USFG's standing to move to strike the third-party claim against the Krebs firm was an issue previously raised in this matter. For the reasons discussed more fully herein, this Court finds USFG has standing to move to strike the third-party claim against Krebs in this matter.

## LEGAL STANDARD

### 1.    Standard of Review

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to plaintiffs. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996); *American Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir.1991). The Court will generally not look beyond the face of the pleadings to determine whether dismissal is warranted under Rule 12. Fed.R.Civ.P. 12(b); *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir.1999) (consideration of documents outside the pleadings requires converting the motion to one for summary judgment).

However, uncontested documents referred to in the pleadings may be considered by the Court without converting the motion to one for summary judgment, even when these documents are not physically attached to the complaint. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir.2002). The Court must resolve doubts as to the sufficiency of the claim in plaintiffs' favor. *Vulcan Materials Company v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir.2001). Dismissal is warranted if it appears certain that plaintiffs cannot prove any set of facts in support of their claim that would entitle them to relief. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395 (5th Cir.2005).

### 2.    Substantive Law

#### A.    *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

As jurisdiction in this matter is premised upon 28 U.S.C. § 1332 (diversity of citizenship), Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

As such, the Court is duty-bound to apply Louisiana law.  The Fifth Circuit's guidance to District

Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions of
> the state's highest court.  In the absence of a final decision by the state's highest court
> on the issue at hand, it is the duty of the federal court to determine, in its best
> judgment, how the highest court of the state would resolve the issue if presented with
> the same case. . . .
>
> [The court must] employ the appropriate Louisiana civilian methodology to decide the
> issues presented the way that [the court] believe[s] the Supreme Court of Louisiana
> would decide them.  Under Louisiana's Civil Code, the only authoritative sources of
> law are legislation and custom.  Thus, in Louisiana, courts must look first and foremost
> to the state's primary sources of law:  the state's constitution, codes, and statutes.  As
> we have previously recognized, the primary basis of law for a civilian is legislation,
> and not (as in the common law) a great body of tradition in the form of prior decisions
> of the courts.  Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana.
> Jurisprudence, even when so cohesive and entrenched as to rise to the level of
> *jurisprudence constante* is merely a secondary law source.  Therefore, while it is true
> that we will not disregard Louisiana appellate court decisions unless we are convinced
> by other persuasive data that the highest court of the state would decide otherwise,
> particularly if numerous decisions are in accord on a given issue - the so-called
> *jurisprudence constante* - we are not strictly bound by them.

*American International Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir.

2003) (internal citations and quotations omitted).

**B.      Fiduciary Obligations**

Louisiana's Uniform Fiduciaries Law appears in the Civil Law Ancillaries under Code Title

XV-Of Mandate.  By definition, a mandate is "a contract by which a person, the principal, confers

authority on another person, the mandatary, to transact one or more affairs for the principal." La. Civ.

Code art. 2989.  The defining characteristic of a fiduciary relationship, therefore, is the special

relationship of confidence or trust imposed by one in another who undertakes to act primarily for the

benefit of the principal in a particular endeavor. *Scheffler v. Adams and Reese*, LLP, 950 So.2d 641,

648 (La. 2/22/2007).

C.     **The Attorney Client Relationship**

Louisiana law recognizes that an attorney's paramount duty is, and must be, to his client.

*Penalber v. Blount*, 550 So.2d 577, 581 (La.1989).  In *Penalber*, the Louisiana State Supreme Court

expressed an attorney must have undivided loyalty to his client and may not "serve two masters:"

> Louisiana subscribes to the traditional, majority view that an attorney does not owe a
> legal duty to his client's adversary when acting in his client's behalf.  A non-client,
> therefore, generally cannot hold his adversary's attorney personally liable for either
> malpractice or negligent breach of a professional obligation. The intent of this rule is
> not to reduce an attorney's responsibility for his or her work, but rather to prevent a
> chilling effect on the adversarial practice of law and to prevent a division of the loyalty
> owed a client.
>
> An **attorney's duty is to zealously represent his client**. To accomplish this
> obligation, adversarial counsel **must not be hampered by fear of personal liability**
> for negligently injuring his client's opponent.  The attorney's **paramount duty is to his
> client**. As such, not even the Rules of Professional Conduct create actionable duties for
> negligent injury of a client's adversary or negligent breach of professional obligations
> which might run in favor of his client's adversary.

550 So.2d at 581 (emphasis added).  In *Montalvo v.  Sondes*, the Louisiana Sate Supreme Court

affirmed its holding in *Penalber,* again indicating Louisiana Law expressly recognizes an attorney

has no duty to a non-client for malpractice of breach of a professional duty.  637 So.  2d 127, 130

(La.  5/23/94) (the only claim a non-client can allege against counsel for another party is for

intentional torts inflicted with malicious intent); *accord Block v.  Bernard, Cassisa, Elliot & Davis,*

927 So.2d 339, 345 (La. App.  1 Cir.  11/4/2005)(an attorney does not owe a duty of care to his

adversary *or one with whom he is not in privity*).

Recently, in *Scheffler, supra,* the Louisiana State Supreme Court considered whether a

fiduciary obligation was owed between co-counsel who were not in an "adversarial" position, and

the court again reaffirmed its decision in *Penalber* that the attorney's paramount duty is to the

attorney's client:

Drawing upon the principle of undivided loyalty embodied in these rules, this court has adopted the traditional, majority view that an attorney does not owe a legal duty to his client's adversary when acting on his client's behalf.  The avowed intent of the court in adopting this view was not to reduce an attorney's responsibility for his or her work, but to prevent a chilling effect on the adversarial practice of law and to prevent a division of the loyalty owed to the client. *Although addressing the issue of an attorney's duty to his client's adversary, Penalber clearly acknowledges the primacy of the attorney's duty of undivided loyalty, and accentuates the principle that this duty must not be subject to erosion or diversion.*

Based on the foregoing precepts and precedent, we conclude that it is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his or her client. *This duty should not be diluted by a fiduciary duty owed to some other person, such as co-counsel, to protect that person's interest in a prospective fee. While, as a practical matter, both the client and co-counsel stand to benefit from any recovery, their interests are not always identical.* It would be inconsistent with an attorney's duty to exercise independent professional judgment on behalf of his client to impose upon him a fiduciary obligation to take into account the interests of co-counsel in recovering any prospective fee.

950 So.2d at 652-653.

### D.   Reasonable Attorney Fee Awards

In Louisiana, as a general rule, attorney fees are not allowed except where authorized by statute or contract. *Nassif v. Sunrise Homes, Inc.*, 739 So.2d 183, 185 (La. 1999) (*citing Maloney v. Oak Builders, Inc.*, 256 La. 85, 235 So.2d 386, 390 (La. 1970)).  It is "well settled" in Louisiana that, when attorney fee awards are authorized, courts may inquire as to the reasonableness of attorney's fees as part of their prevailing, inherent authority to regulate the practice of law. *Rivet v. State, Dept. of Transp. & Development*, 800 So.2d 777, 782 (La. 2001).  Simply put, an attorney is not entitled to recover any attorney's fee from a client beyond that which is determined to be reasonable by the district court. *Id.*

Moreover, Rule 1.5(a) of the Rules of Professional Conduct, provides:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining

-10-

the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

State Bar Articles of Incorporation, Art. 16, Rules of Prof.Conduct, Rule 1.5 (West 2007).

## DISCUSSION

**1.      USFG's Standing to move to Strike Third-Party Claims against Alberta Adams and the Krebs Firm**

Prefatorily, it is noted that this Court *sua sponte* raised the issue of USFG's standing to move to strike the Third-Party Demand by Builders, Edmund and Cheryl against Alberta Adams and the Krebs firm. USFG submitted briefing on the issue; however, Builders, Edmund, and Cheryl filed no response. The Court thus considers USFG's arguments and authority as unopposed.

USFG urges it has standing pursuant to Rule 14(a) of the Federal Rules of Civil Procedure which provides "any" party may move to strike the third-party claim. USFG also relies on Fifth Circuit jurisprudence upholding the right of defendants to the principal demand to move to dismiss a third-party demand to which they were not a party. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 464 (5th Cir. 1971) (there was "obviously no merit whatever" to the contention that parties who were not parties to third-party demand could not seek dismissal of the third-party demand; Rule 14, Fed.R.Civ.P. "clearly provides that 'any party may move to strike the third-party claim'"). Seeing no error in law, this Court concludes USFG has standing as a party in the

-11-

underlying matter to move to strike the third-party claim by Builders, Edmund, and Cheryl against Alberta Adams and the Krebs firm.

## 2.    Subject Matter Jurisdiction

This Court also raised *sua sponte* the issue of subject matter jurisdiction insofar as the Third-Party Demands clearly involve non-diverse parties. USFG submitted briefing on the issue; however, Builders, Edmund, and Cheryl filed no response. The Court thus considers USFG's arguments and authority as unopposed.

USFG avers this Court has subject matter jurisdiction over the Third-Party Demand against non-diverse parties by operation of supplemental jurisdiction provisions found at 28 U.S.C. § 1367 and Rule 14 of the Federal Rules of Civil Procedure.[7]  Additionally, USFG relies on jurisprudence from the Fifth Circuit and other Circuits indicating the term "plaintiff" as found in 28 U.S.C. § 1367(b) refers only to the original plaintiff in the action, not to a defendant who happens to be a counter-plaintiff, cross-plaintiff, or third-party plaintiff." *State Nat'l Ins.  Co., Inc.  v.  Yates*, 391 F.3d 577, 580 (5th Cir.  2004). Seeing no error in law, this Court concludes it has subject matter jurisdiction over the Third-Party Demands by Builders, Edmund, and Cheryl against non-diverse parties pursuant to the applicable statutory and jurisprudential authority relied on by USFG. Accordingly, this Court will address the narrow issue raised by the parties, namely whether Alberta Adams and the Krebs firm owe a fiduciary duty to Builders, Edmund, and Cheryl as to the amount of attorney fees charged to USFG solely by way of the MSA indemnity agreement between Builders,

---

[7]  When this Court raised *sua sponte* the issue of subject matter jurisdiction, the parties discussed possible parallel state proceedings between Builders, Edmund, Cheryl and Melancon, a Third-Party Defendant in a different Third-Party Demand filed by Builders, Edmund and Cheryl.  Whether the principles of abstention might apply to the Melancon matter is an issue that is not before this Court at this time.

Edmund, Cheryl and USFG.

3.     **Whether Alberta Adams and the Krebs Firm Owe a Fiduciary Duty to Builders, Edmund, and Cheryl as to the Amount of Attorney Fees Charged to USFG Solely by Way of the MSA Indemnity Agreement Between Builders, Edmund, Cheryl and USFG**

The narrow issue presented for consideration by this Court is whether Alberta Adams and the Krebs firm owe a fiduciary duty to Builders, Edmund, and Cheryl as to the amount of attorney fees charged to USFG solely by way of the MSA indemnity agreement between Builders, Edmund, Cheryl and USFG.  Builders, Edmund and Cheryl admit they are liable for USFG's attorney fees by way of the MSA indemnification agreement, and they further recognize Melancon's alleged improper representation of USFG "was vicariously the lack of action" on the part of Builders, Edmund and Cheryl.  Further, they acknowledge Ms. Adams and the Krebs firm were retained by USFG to represent the sole interests of USFG yet Ms. Adams and the Krebs firm obtained "successful results" for USFG and Builders, Edmund and Cheryl.  Further, as noted, Builders, Edmund and Cheryl admit and do not dispute they owe attorneys fees to USFG pursuant to the argued provisions of the contract.  However, Builders, Edmund and Cheryl argue "the fees are excessive, irrespective of the successful result obtained," and have filed a Third-Party Demand on this basis.  USFG argues this is a "misplaced affirmative defense," which is better raised by Builders, Edmund, and Cheryl as a defense in their Answer.

The MSA, which is the sole basis for the Third-Party claim by Builders, Edmund, and Cheryl against Ms. Adams and the Krebs Firm, reveals no support for a conclusion that a fiduciary relationship is created by the MSA as between Ms. Adams and the Krebs and Builders, Edmund, and Cheryl.  Ms. Adams and the Krebs firm are not parties or signatories to the MSA.  Rather, the only parties to the MSA are Builders, Edmund, Cheryl and USFG.  There is no language in the MSA to

-13-

support an argument Builders, Edmund, and Cheryl are intended to be beneficiaries of the indemnity agreement. Rather, there is clear expression of the parties' intent that the MSA "shall be liberally construed so as to protect, exonerate, and indemnify" *USFG* should USFG be required to obtain legal counsel in the manner anticipated under the contract. Accordingly, the MSA provides no basis for this Court to conclude Ms. Adams and the Krebs firm, which was hired by USFG to represent the sole interests of USFG, owe a fiduciary duty to Builders, Edmund, and Cheryl pursuant to the MSA. The fact that Krebs and Adams were hired by USFG and USFG is the insurer of Builders, Edmund and Cheryl and relief provided to USFG would, *in most, but not all, instances* also, enure to the benefit of Builders, Edmund and Cheryl, does not, in and of itself create such a fiduciary obligation. *Shuffler, supra.*

Pursuant to the MSA, Builders, Edmund, and Cheryl "shall exonerate, indemnify and keep indemnified USFG" from "any and all liabilities, losses, and expenses" of "whatsoever kind or nature (including but not limited to, interest, court costs, and **counsel fees**) imposed upon, sustained or incurred by USFG" upon the failure of Builders, Edmund or Cheryl to perform or comply with the MSA. There is no language or expression of the parties' intent within the MSA indemnity provision that should USFG be forced to hire counsel a fiduciary duty is owed by that counsel hired by USFG to Builders, Edmund, and Cheryl. This Court notes there is no dispute Builders, Edmund, and Cheryl owe attorney fees to USFG under the MSA indemnification; rather, the dispute is as to the <u>amount</u> of those attorney fees. Likewise, there is no dispute USFG hired Ms. Adams and the Krebs firm to represent the sole interests of USFG, while Melancon originally represented and continued representing the interests of Builders, Edmund, and Cheryl. There is no dispute Ms. Adams actions enured to the benefit of Builders, Edmund and Cheryl. Lastly, there is no dispute

-14-

USFG incurred legitimate counsel fees, which it paid to Ms. Adams and the Krebs firm. Accordingly, pursuant to the clear and unambiguous terms of the MSA indemnity provisions, and as Builders, Edmund and Cheryl do not dispute the fact they owe attorneys fees pursuant to the MSA, this Court so finds. This Court further finds the language of the MSA does not create a fiduciary obligation on behalf of USFG's attorney the Krebs firm and Adams, running to Builders, Edmund and Cheryl pursuant to the MSA.

A review of the Third-Party Demand, and arguments made to support that demand, reveal no facts or basis beyond the argued MSA that could establish a fiduciary obligation running from Krebs and Adams to Builders, Edmund and Cheryl. Nor have third-party plaintiffs presented any basis for this Court to find that, as a matter of law, a fiduciary obligation runs from Krebs and Adams to Builders, Edmund and Cheryl. Specifically, there is no allegation of a *contract* between Ms. Adams, the Krebs firm, and Builders, Edmund and Cheryl, nor jurisprudence establishing such a fiduciary obligation by operation of law notwithstanding the absence of a contract. To the contrary, the jurisprudence would suggest otherwise. *Shuffler, supra.* The Third-Party Claim fails to allege facts sufficient to establish the alleged "special relationship of confidence or trust" between Builders, Edmund and Cheryl and Adams and Krebs argued by Builders, Edmund and Cheryl, nor that Ms. Adams and the Krebs firm were hired for the benefit of or undertook to act primarily for the benefit of Builders, Edmund and Cheryl in any endeavor. The Third-Party Demand also, is devoid of any allegations regarding the possible existence of a mandate, or agency relationship, between Ms. Adams and the Krebs firm and Builders, Edmund, and Cheryl; there is no allegation that Ms. Adams and/or the Krebs firm were transacting any affairs for the direct benefit of Builders, Edmund or Cheryl. Consequently, third-party plaintiffs, Builders, Edmund and Cheryl, have presented no basis

-15-

in law, fact or jurisprudentially supported argument for this Court to find a fiduciary obligation running from Ms. Adams and the Krebs firm to Builders, Edmund and Cheryl.  Rather, this Court finds Adams and Krebs were hired by and acted *on behalf of USFG*, thus, there is no basis upon which to make a finding that by operation of law such a relationship has been created.

Builders, Edmund and Cheryl nonetheless, argue and plead, "it was openly known by all parties that [Builders, Edmund, and Cheryl] would ultimately be responsible for reimbursement of [USFG], " and thus, the argued fiduciary obligation should flow.  According to Builders, Edmund and Cheryl, the MSA created a situation where attorneys fees for USFG, "[it] was simply a matter of flow through billing," which "created upon [Ms. Adams and the Krebs firm] a duty to [Builders, Edmund and Cheryl] to avoid overkill" on the defense of the claims.  While it will be assumed as true for these purposes only, that it was openly known by all parties that Builders, Edmund, and Cheryl would reimburse USFG all cost of the representation by counsel, there is nonetheless no allegation in the Third-Party Demand that the Krebs firm and Adams in any way, *agreed* to limit their fees or otherwise tailor their professional services on behalf of USFG *to suit the satisfaction of Builders, Edmund and Cheryl.*  Nor that their client, USFG, would have agreed to such an intrusion upon the attorney client relationship between Adams, Krebs and USFG.  Without such a finding the underlying rationale of *Shuffler, supra* comes into play.

This Court notes the long standing Louisiana jurisprudence on the nature of the attorney-client relationship as set forth in *Penalber, supra, Montalvo, supra, and Scheffler, supra.*  While those cases are not directly on point, they illustrate the underlying policy concern of divided loyalty and all share this, nevertheless, common thread, namely that it is fundamental to the attorney-client relationship that an attorney have an undivided loyalty to his or her client, and that duty should not

-16-

be diluted by a fiduciary duty owed to a non-client.  There is no evidence of any nature Builders, Edmund and Cheryl were ever held to be a client of Adams and the Krebs firm.  To the contrary, Melancon remained the attorney acting on behalf of Builders, Edmund and Cheryl even after Adams and the Krebs firm entered on behalf of USFG.

There is no dispute Ms. Adams and the Krebs firm were hired by USFG to represent the sole interests of USFG.  There are no allegations that Builders, Edmund and Cheryl enjoyed any privity of contract with Ms. Adams and the Krebs firm.  Consequently, there is no question that USFG is the client of Ms. Adams and the Krebs firm.  Pursuant to *Penalber, supra, Montalvo, supra, and Scheffler, supra,* it is fundamental to the attorney-client relationship that Ms. Adams and the Krebs firm have an undivided loyalty to their client, USFG.  That duty should not be diluted by a fiduciary duty owed to non-clients, Builders, Edmund and Cheryl.  Thus, this Court finds no basis for a finding of a fiduciary relationship as between Adams, the Krebs firm, and Builders, Edmund and Cheryl. Thus, no fiduciary obligation is owed by Adams and the Krebs firm to Builders, Edmund and Cheryl.

While this Court finds Builders, Edmund and Cheryl have failed to establish the argued fiduciary obligation on the part of Adams and the Krebs firm the Court finds the arguments made by Builders, Edmund and Cheryl might however, be better grounded in equity,[8] as raised as an affirmative defense to the contractual claim made by USFG and thus be a matter of contract and equity, *as between USFG and Builders, Edmund and Cheryl.*

Here, Builders, Edmund, and Cheryl apparently take issue with the USFG payments to Ms. Adams and the Krebs firm, which Builders, Edmund and Cheryl believe to be excessive and

---

[8] This Court, at this juncture, makes no determination nor renders any opinion whatsoever, whether preliminary or otherwise, as to the underlying issue of whether the incurred attorneys fees are reasonable or not reasonable given the unique circumstances involved.

unreasonable, and argue it would be inequitable to find Builders, Edmund and Cheryl liable for those alleged unreasonable amounts, pursuant to their contractual obligation for "counsel fees" because USFG arguably had no motivation not to incur unreasonable fees, as all the parties openly knew USFG would never be "liable therefor" and therefore again, Builders, Edmund and Cheryl argue USFG had no motivation to insure the fees charged were reasonable and obviously did not so insure, thus, such unreasonable fees are inequitable and not contemplated by the cited contractual language. In other words, Builders, Edmund and Cheryl argue inherent in the agreement to pay "counsel fees" is the understanding those fees must be reasonable, or there would be no possible avenue available for enforcement of the professional responsibility of attorneys to charge a reasonable fee under the circumstances.  To carry this line of logic farther, the contractual language clearly would not require Builders, Edmund and Cheryl to pay fraudulent attorneys fees, charged for services not rendered, thus, their argument suggests the same contractual language should not be interpreted, then to include unreasonable attorneys fees.  This Court makes no determination or comment upon this argument beyond noting the argument is before this Court only indirectly at this juncture.  However, within its argument in support of its Third-Party Demand Builders, Edmund and Cheryl seem to argue USFG failed to meet their contractual obligation to act reasonably under the contract, by incurring and paying *unreasonable* attorneys fees, precisely because USFG *knew* they ultimately would not have to pay those fees.  Thus, although Builders, Edmund and Cheryl admit they owe USFG attorneys fees, they argue they do not owe USFG *unreasonable* attorneys fees.  Thus, inherent in Builders, Edmund and Cheryl's argument, albeit not expressly or concisely argued, is the argument of the understood inference of reasonableness underlying their contractual obligation to pay USFG's attorneys fees, with equity to support that inference.  Builders, Edmund and Cheryl's

argument would suggest USFG was not given carte blanche to incur unreasonable attorneys fees and expect to pass those same unreasonable fees along to Builders, Edmund and Cheryl without remedy or relief allowed to Builders, Edmund and Cheryl.  However, that potential remedy is not found within the Third-Party Demand against Krebs and Adams.  Thus, this Court need not address this argument in its affirmative state, because the underlying issue of reasonableness of the legal fees, the argued inference of reasonableness, within the contractual language, the operation of equity and the extent of liability owed pursuant to the contract by Builders, Edmund and Cheryl to USFG, is not at present before this Court, rather awaits this Court by way of the affirmative defense pled by Builders, Edmund and Cheryl in their Answer to the principal demand.

In view of the foregoing therefore, this Court finds dismissal of the Third-Party Demand is warranted, as this Court finds Builders, Edmund and Cheryl cannot prove any set of facts in support of their claim in the Third-Party Demand against Ms. Adams and the Krebs firm that would entitle Builders, Edmund and Cheryl to relief.

### CONCLUSION

In consideration of the pleadings and the relevant facts and law, this Court finds the "Re-Urged 12(b)(6) Motion to Dismiss Defendant's Third-Party Demands Against USF&G's Counsel" [Doc. 36] filed on behalf of United States Fidelity & Guaranty Company should be and is hereby GRANTED.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this ____ day of July, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-19-