**RECEIVED**

MAR 2 8 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

UNITED STATES FIDELITY &
GUARANTY COMPANY

CIVIL ACTION NO. 06-895

VERSUS

JUDGE DOHERTY

E. L. HABETZ BUILDERS, INC., ET AL

MAGISTRATE JUDGE METHVIN

## MEMORANDUM RULING ON UNITED STATES FIDELITY & GUARANTY COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending before this Court is the Motion for Partial Summary Judgment [Doc. 57],[1] filed by

plaintiff United States Fidelity & Guaranty Company (USF&G). The motion is opposed [Doc. 66],

and USF&G has filed a reply brief [Doc. 83]. For the following reasons, USF&G's Motion for

Partial Summary Judgment is GRANTED.

**I.   Factual and Procedural Background**

A review of the pleadings in this matter reveals the following uncontested facts. On May 31,

2006, USF&G filed a petition against defendants, E. L. Habetz Builders, Inc., a Louisiana

Corporation and its principals, Louisiana residents, Edmund L. Habetz and Cheryl A. Habetz

[hereinafter referred to collectively as "Habetz," unless otherwise noted]. Habetz is actively

involved in commercial construction projects, and it attracts jobs by submitting bids to architects and

owners based upon specific plans and criteria. If a bid is accepted, Habetz is required to provide

either a performance bond and/or a payment bond. In 1991, Habetz executed a Master Surety

---

[1] USF&G states the instant motion against Habetz is styled as one for "partial summary judgment," because even though the motion seeks summary judgment on behalf of *all* claims raised by USF&G against Habetz, it does not address the third-party claims raised by Habetz against the Melancon entities. USF&G is not a party to the third-party claims alleged by Habetz against Melancon. Thus, adjudication of the claims in the instant motion does not dispose of the entire case.

Agreement (MSA) with USF&G, a foreign company.

Under the MSA: (1) Habetz (including Edmund and Cheryl Habetz), along with USF&G, is designated as "undersigned;"[2] (2) "principal" is defined as one or more undersigned or any partnership, association, corporation, or other legal or commercial entity in which undersigned have a substantial material and/or beneficial interest...; (3) "bond' is defined as a "contract of suretyship, guaranty, or indemnity" or "the continuation, extension, alteration, renewal or substitution of such conflict; and (4) USF&G is identified as "surety." The MSA provides the following indemnity provisions:

I        (A)  This AGREEMENT binds UNDERSIGNED and the heirs, personal representatives, successors and assigns thereof, jointly and severally, to SURETY in connection with all BOND(S) heretofore or hereafter executed, provided or procured by SURETY in behalf of PRINCIPAL in any penal sum and in favor of any obligee(s):

* * *

III      (A) UNDERSIGNED shall exonerate, indemnify, and keep indemnified SURETY from and against any and all liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY by reason of: (1) SURETY having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT;

(B)  In order to exonerate or indemnify SURETY, UNDERSIGNED shall upon demand of SURETY, place SURETY in funds before SURETY makes any payment; such funds shall be, at SURETY'S option, money or property, or liens or security interests in property. (The amount of such money or property or the value of the property to become subject to liens or security interests, shall be determined by SURETY.)

IV      (A)  The liability of the UNDERSIGNED hereunder shall extend to

---

[2] "Undesigned" is defined as "persons who execute this agreement."

-2-

and include all amounts paid by SURETY in good faith under the belief that: (1) SURETY was or might be liable therefore: (2) such payments were necessary or advisable to protect any of SURETY'S rights or to avoid or lessen SURETY'S liability or alleged liability;

(B)   the liability of UNDERSIGNED to SURETY shall include interest from date of SURETY'S payments at the maximum rate permitted in the jurisdiction in which this AGREEMENT is enforced, or is enforceable;

(C)   the voucher(s) or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer of SURETY shall be prima facie evidence of the fact and extent of the liability of UNDERSIGNED to SURETY.

V   (C) in the event SURETY should file suit at law or in equity to enforce the terms of this AGREEMENT, SURETY shall be entitled to recover its own attorney's fees and expenses in connection with such suit.

MSA, at ¶¶ I-V.  The MSA further provides, "This AGREEMENT shall be liberally construed so as to protect, exonerate, and indemnify SURETY."  MSA at ¶ 9 (emphasis in original).

Pursuant to the MSA, Habetz commenced numerous projects over the years: however, two projects, the Eunice Nursing Home and a St. Martinville School project, developed problems that required legal intervention.  Specifically, four legal claims were filed against Habetz and USF&G.

The first claim against Habetz and USF&G was brought by Eunice Nursing Home, which filed a claim in arbitration for allegedly defective work by Habetz.  Upon notification of the claim and pursuant to the MSA, Habetz hired Louisiana attorney William Melancon and his firm, Melancon and Associates, L.L.C. (hereinafter referred to collectively as "Melancon"), to defend Habetz and USF&G.  After a mediation was set in the matter, USF&G retained another Louisiana attorney, Alberta Adams, of the Krebs, Farley, and Pelleteri law firm (the "Krebs firm"), to represent

the sole interests of USF&G.[3]  After Ms. Adams came to believe certain affirmative defenses had

not been pled by Melancon on behalf of USF&G, she became fully involved in the matter, presented

the affirmative defenses on behalf of USF&G, and ultimately prevailed in extracting USF&G from

the matter by way of a successful motion for summary judgment.  The Krebs firm billed USF&G

$156,102.92 for services as to this claim, which included attorney's fees, expert fees, filing costs,

and related expenses in investigating the claims alleged by the Nursing Home of Eunice, asserting

its legal defenses, and preparing its defense for the Eunice arbitration.  In reviewing the invoices of

the Krebs firm during her deposition on January 18, 2008, Ms. Adams testified the work reflected

in the time entries on the invoices was reasonable and necessary to protect the interests of USF&G

in the Eunice arbitration.[4]

The second claim against Habetz and USF&G was related to a demand by "Brown's

Drywall," a Habetz sub-contractor, for payment for work allegedly done by Brown's Drywall at a

St. Martinville school.  Habetz again hired Melancon to defend USF&G and Habetz pursuant to the

MSA, however, counsel for Brown's Drywall ultimately took a default judgment against USF&G

while USF&G was being represented by Melancon.  Upon USF&G's notice of default judgment,

USF&G again hired Ms. Adams to represent the sole interests of USF&G.[5]  Ms. Adams successfully

reversed the default judgment and negotiated a settlement of Brown's Drywall's claims against

USF&G for the sum of $1,800.00.  The Krebs firm billed USF&G $7,010.10 in attorney's fees,

---

[3] Melancon continued representing the interests of Habetz, while Ms. Adams represented the interests of USF&G.

[4] See Deposition of Alberta Adams, attached as Exhibit C-1 to USF&G's Motion for Partial Summary Judgment, at pp. 18, 26, 30, 32, 36, 40, 45-46, 54, and 56.

[5] Melancon continued representing the interests of Habetz, while Ms. Adams represented the interests of USF&G.

-4-

expenses, and costs for this claim.  In reviewing the invoices of the Krebs firm during her deposition on January 18, 2008, Ms. Adams testified the work reflected in the time entries on the invoices was reasonable and necessary to protect the interests of USF&G in the Brown's Drywall litigation.[6]

The third claim against Habetz and USF&G involved a lawsuit by the St. Martin Parish School Board seeking performance on a Payment and Performance Bond.  USF&G again retained Ms. Adams to represent only the interests of USF&G, who timely filed exceptions and obtained dismissal of the claims against USF&G in favor of arbitration.[7]  Krebs billed USF&G $6,504.41 for services as to this claim, including attorney's fees, expenses, and costs, and Ms. Adams testified the foregoing amount was reasonable and necessary to protect the interests of USF&G.[8]

The fourth claim against Habetz and USF&G involved a demand brought by "Swepco," another Habetz sub-contractor, for payment for work allegedly done at the St. Martinville school.  USF&G hired Ms. Adams to litigate USF&G's sole interests in the matter.[9]  The Krebs firm billed USF&G $1,464.90 for services on this claim, including attorney's fees, expenses, and costs, which was still outstanding as of the date USF&G filed its May 2006 complaint in the instant matter.  Ms. Adams testified the foregoing amount was reasonable and necessary to protect the interests of USF&G.[10]

---

[6] See Deposition of Alberta Adams, at pp. 72-74; 76; 78.

[7] The pleadings and submissions in this matter suggest the efforts of Ms. Adams and the Krebs firm in the fourth claim inured to the benefit of Habetz as well as USF&G.  Specifically, it appears Ms. Adams filed exceptions in the fourth claim that resulted in the dismissal of the claim against Habetz and USF&G in favor of arbitration.  See Habetz's Memorandum in Opposition to Motion to Dismiss Third-Party Demand [Doc. 24], p. 3.

[8] See Deposition of Alberta Adams, at pp. 58-60; 62-68; see Affidavit of Susan Weinstock, Technical Director for Travelers, which is the successor-in-interest to USF&G, at ¶9.

[9] In the third and fourth claims against Habetz and USF&G, Ms. Adams represented the sole interests of USF&G, while Melancon represented Habetz.

[10] See Deposition of Alberta Adams, at pp. 86-87; see also Affidavit of Susan Weinstock at ¶8.

In September 2005, the Krebs firm, on behalf of USF&G, sent a letter to Habetz requesting payment of the expenses it incurred in relation to the Eunice Nursing Home arbitration and the Brown's Drywall litigation.  USF&G continued to seek to enforce its indemnity rights under the MSA throughout 2005 and the first half of 2006.  During that time period, Edmund Habetz made payments totaling approximately $14,000.00[11] to USF&G.

On May 31, 2006, USF&G filed the instant complaint [Doc. 1] in this Court against Habetz, seeking approximately $172,882.33[12] in attorneys fees, costs, and expenses incurred throughout the history of the foregoing legal matters pursuant to the MSA.  In its complaint, USF&G argues the fees and expenses it incurred in all of the foregoing underlying legal matters were incurred in the good faith belief the steps being taken were advisable and necessary to protect its interests and lessen its alleged liability.

On August 8, 2006, Habetz filed an Answer and Third-Party Demands [Doc. 12] against Melancon and the Krebs Firm.[13]  In its Answer, Habetz admits liability for "reasonable costs and expenses including attorney's fees," but argues "the amount of $172,882.33 is not reasonable under the circumstances."  In its Third-Party Demand against Melancon, Habetz alleges the following claims: (1) a "negligence" claim[14] for Melancon's allegedly incompetent legal work performed in

---

[11] There is a discrepancy in the record on this point.  In its Complaint, USF&G alleges any amount it is owed is subject to a "credit to the Defendants of the *$12,000* paid to USF&G to date."  See Complaint, Doc. 1 (emphasis added).  However, in its Motion for Partial Summary Judgment, USF&G alleges Habetz has paid it *$14,000* toward the amount due.  In its response to the instant motion, Habetz argues it has already "paid $14,000 leading up to the lawsuit."  See Habetz's opposition brief, Doc. 66.

[12] This amount includes the amount of USF&G's settlement with Brown's Drywall in the amount of $1,800.00.

[13] This Court previously dismissed the third-party claims filed by Edmund and Cheryl Habetz, individually, against the Melancon entities [Docs. 45 & 46], as well as the third-party claims filed by Habetz and Edmund and Cheryl Habetz, individually, against the Krebs firm and Alberta Adams. [Docs. 48 & 49].

[14] Habetz does not cite to any source of law for this "negligence" claim.

the Eunice Nursing Home and Brown's Drywall matters, which resulted in the Krebs firm's involvement and subsequent legal fees, for which – Habetz argues – USF&G would not be seeking reimbursement from Habetz had Melancon competently performed his function as counsel for Habetz and USF&G; (2) a breach of contract claim for economic losses in the amount of $82,600.00, which Habetz claims it paid Melancon to represent it in the Eunice Nursing Home and Brown's Drywall matters, "of which only portions of said amount were reasonable considering the competency of the work performed;" (3) a claim for economic losses in the form of attorneys' fees in having to pursue the instant claim for indemnity against Melancon; (4) a claim for non-pecuniary damages for having to endure "[this] ordeal" in an amount to be determined at trial; and (5) a claim for economic damages in the form of lost business opportunity, in that due to the continued difficulty in the defense of the claims as stated above, USF&G&G refused to honor its commitment to provide Habetz with bonding services, which resulted in a five-month period in which Habetz was without bonding services and was unable to bid on jobs.

In the instant motion for summary judgment, USF&G argues there are no genuine issues of material fact regarding either Habetz's liability for indemnification to USF&G under the MSA or the reasonableness of the amount of damages sought by USF&G in its complaint, and that summary judgment should be granted in USF&G's favor on all claims.

## II.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c)."

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618

(5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."
>
> . . . .
>
> . . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that,

> where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.   Law and Analysis

### A.   *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

As jurisdiction in this matter is premised upon 28 U.S.C. § 1332 (diversity of citizenship),

Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

As such, the Court is duty-bound to apply Louisiana law.  The Fifth Circuit's guidance to District

Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions of
> the state's highest court.  In the absence of a final decision by the state's highest court
> on the issue at hand, it is the duty of the federal court to determine, in its best
> judgment, how the highest court of the state would resolve the issue if presented with
> the same case. . . .
>
> [The court must] employ the appropriate Louisiana civilian methodology to decide the
> issues presented the way that [the court] believe[s] the Supreme Court of Louisiana
> would decide them.  Under Louisiana's Civil Code, the only authoritative sources of
> law are legislation and custom.  Thus, in Louisiana, courts must look first and foremost
> to the state's primary sources of law:  the state's constitution, codes, and statutes.  As
> we have previously recognized, the primary basis of law for a civilian is legislation,
> and not (as in the common law) a great body of tradition in the form of prior decisions
> of the courts.  Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana.
> Jurisprudence, even when so cohesive and entrenched as to rise to the level of
> *jurisprudence constante* is merely a secondary law source.  Therefore, while it is true
> that we will not disregard Louisiana appellate court decisions unless we are convinced
> by other persuasive data that the highest court of the state would decide otherwise,
> particularly if numerous decisions are in accord on a given issue - the so-called
> *jurisprudence constante* - we are not strictly bound by them.

*American International Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir.

2003) (internal citations and quotations omitted).

### B.   USF&G's Motion for Summary Judgment

In its complaint, USF&G alleges two claims against Habetz: (1) a claim for all loses, including

costs, expenses, and attorneys fees incurred by USF&G, in investigating, defending, and/or resolving

claims under the bonds issued on the projects and/or by reason of having executed said bonds, said

-10-

amount being in the total sum of $172,882.33 to date, without prejudice to seek additional loses as

they accrue, and (2) a claim for all attorneys fees, costs, and expenses incurred by USF&G in

enforcing Habetz's indemnity obligations, which USF&G alleges amounts to $44,643.40.  USF&G

alleges all amounts due it are subject to a credit to Habetz in the amount of $14,000[15] paid to

USF&G to date.  In the instant motion, USF&G argues there are no genuine issues of material fact

regarding either Habetz's liability for indemnification to USF&G under the MSA or the

reasonableness of the amount of damages sought by USF&G in its complaint.

> **1.      Is USF&G entitled to summary judgment on the issue of Habetz's**
> **liability for indemnification pursuant to the MSA?**

USF&G argues the respective rights and obligations of USF&G and Habetz are governed by

the clear terms of the MSA, the provisions of which unambiguously require Habetz to indemnify

USF&G for *all* losses sustained by USF&G by reason of its execution of bonds on behalf of Habetz

and by reason of its efforts to enforce the terms of the MSA itself, including all attorneys' fees and

expenses.

The general rules which govern the interpretation of other contracts apply in construing a

contract of indemnity.  *Soverign Ins. Co. v. Texas Pipe Line Co.*, 488 So.2d 982, 984 (La.1986).

It is black letter law that a contract is the law between the parties, and interpretation of a contract is

the determination of the common intent of the parties.  *Soverign*, 488 So. 2d at 984.  As the Fifth

Circuit stated in *In re Liljeberg Enterprises, Inc.*:

> Under Louisiana law, a contract is the law between the parties, and is read for its plain
> meaning."  Thus, "[u]nder Louisiana law, where the words of a contract are clear and
> explicit and lead to no absurd consequences, the contract's meaning and the intent of
> its parties must be sought within the four corners of the document and cannot be

---

[15] As previously noted, it is unclear whether Habetz has already paid USG&G *$12,000* or *$14,000* toward
the amount USF&G alleges is still due and owing.

explained or contradicted by extrinsic evidence," such that, "[i]f a court finds the contract to be unambiguous, it may construe the intent from the face of the document-without considering extrinsic evidence-and enter judgment as a matter of law."

304 F.3d 410, 439 (5th Cir. 2002) (citations omitted). *See also* La. Civ.Code art 1983;[16] *Louisiana Nat. Lease Incorporation v. Family Pools, Inc.*, 345 So.2d 480, 482 (La. 1977); *McCrory v. Terminex Service Company, Inc.*, 609 So.2d 883, 884 (La. App. 4th Cir. 1992). Furthermore, contracts "are governed by the law expressly chosen or clearly relied upon by the parties, *except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable . . .*" LA. CIV. CODE ANN. art. 3540 (emphasis added).

In the instant case, USF&G cites Paragraph III(A) of the MSA in support of its argument there are no genuine issues of material fact regarding the liability of Habetz for indemnification, to wit:

> III      (A) UNDERSIGNED shall *exonerate, indemnify, and keep indemnified SURETY* from and against any and all liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY by reason of: (1) SURETY having executed, provided or procured BOND(S) in behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT;

*See* MSA ¶ III(A) (emphasis added).

In response, Habetz does not dispute the existence of the MSA or challenge its contractual terms.  In fact, no party argues that the MSA executed by USF&G and Habetz does not apply.[17]

---

[16] Article 1983 states:

> Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.

La. Civ. Code. Ann. art. 1983 (West 2008).

[17] This Court notes *USF&G*, in its motion for partial summary judgment, makes passing reference to certain testimony concerning the MSA and its possible application to USF&G's claims in the instant case. However, both USF&G and Habetz have clearly admitted the MSA governs the issues between the parties and both USF&G and Habetz argue from the position that the MSA applies.  Therefore, USF&G's passing references to this testimony

Rather, Habetz argues USF&G ignores two affirmative defenses asserted by Habetz in its Answer, to wit: (1) that USF&G failed to put Habetz on *notice of default* of its obligation to contractually defend and indemnify USF&G, and (2) that USF&G failed to provide Habetz with any *opportunity to remedy the failure to perform*. Habetz argues USF&G's obligation to put Habetz on notice of default, and the manner in which it should have done so, is provided by the Louisiana Civil Code.

Habetz cites Article 1990 of the Louisiana Civil Code in support of its argument USF&G was required to put Habetz on notice of default before USF&G is entitled to "specified damages." Article 1990 states:

> When a term for the performance of an obligation is either fixed, or is clearly determinable by the circumstances, the obligor is put in default by the mere arrival of that term. In other cases, the obligor must be put in default by the obligee, but not before performance is due.

LA. CIV. CODE ANN. art. 1990 (West 2008).

Additionally, Habetz cites the Louisiana Civil Code (without specifying a specific code article) for the methods by which Habetz could have been put on notice of default. This Court notes the applicable code article is Article 1991:

> An obligee may put the obligor in default by a written request of performance, or by an oral request of performance made before two witnesses, or by filing suit for performance, or by a specific provision of the contract.

LA. CIV. CODE ANN. art. 1991 (West 2008).

Habetz acknowledges the MSA is silent as to how to put Habetz on notice of default, but nevertheless argues *none* of the methods prescribed by the Louisiana Civil Code were utilized by USF&G to put Habetz on notice of default. Habetz further notes, in a footnote, that the "Civil Code in Articles 3035 et seq. does not abrogate the application of Civil Code 1990 and Civil Code Article

_____

does not alter this Court's ruling on the issues presented at this time.

1994[18] or other provisions of the law of suretyship." Habetz argues that, because USF&G did not put Habetz on notice of default prior to the time it retained the Krebs firm, it cannot succeed on the merits of its indemnification claim, and, therefore, summary judgment cannot be granted in USF&G's favor.

This Court first notes that, based upon its clear and unambiguous terms, *the MSA does not impose on Habetz an obligation to provide a defense to USF&G in connection with the provision or procurement of any bond on Habetz's behalf.* Rather, Habetz is obligated to "exonerate, indemnify, and keep indemnified" USF&G "from and against any and all liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by [USF&G]" by virtue of either providing bonds on behalf of Habetz or failing to comply with the terms of the MSA. *Accordingly, the MSA does not require Habetz to defend USF&G, but only to indemnify it.*[19] For this reason, USF&G is not

---

[18] Article 1994 states:

> An obligor is liable for the damages caused by his failure to perform a conventional obligation.
>
> A failure to perform results from nonperformance, defective performance, or delay in performance.

LA. CIV. CODE ANN. art. 1994 (West 2008).

[19] The terms "exonerate" is not defined in the MSA. Black's Law Dictionary defines "exonerate" as follows:

> exonerate (eg-**zon**-<<schwa>>-rayt), vb. **1.** To free from responsibility < exonerate from the payment of the debt>. Cf. EXCULPATE. **2.** To free from encumbrances <exonerate the property from the mortgage lien>. -- **exonerative** (eg-**zon**-<<schwa>>-r-ay-tiv or -<<schwa>>-tiv), adj.

BLACK'S LAW DICTIONARY (8th ed. 2004).

This Court conducted its own research of the term "exonerate" in the relevant jurisprudence and did not find support for an argument the term "exonerate," when used in this context, is tantamount to "defend" under the applicable rules of surety law in Louisiana.

attempting to enforce Habetz's *defense* of it in connection with the bonds at issue, but is only attempting to enforce Habetz's obligation to *indemnify* USF&G in connection with the provision of the bonds at issue. There can be no default of an obligation not owed.

Moreover, Habetz's argument that USF&G has somehow failed to support its argument that it had the right to retain private counsel "at its whim" is similarly unavailing. The MSA is *silent* with regard to the issue of retention of counsel by USF&G, because *the MSA does not provide for the defense of USF&G*, only the *indemnification* of USF&G. Thus, by the very terms of the MSA itself, *USF&G was not restricted from retaining the Krebs firm for whatever reason it chose and was not required to put USF&G on notice of default prior to doing so.*

This Court concludes the clear language of the MSA and the MSA's silence on the matter of defense and thus notice of default as to that defense, and opposed to USF&G's right to obtain *indemnification* from Habetz for "all liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY" is fatal to Habetz's argument. The MSA contains no provision obligating Habetz to defend USF&G, limiting USF&G's right to obtain counsel on its behalf, or putting Habetz on notice of any default as to a defense provided, notwithstanding the concept of default is contemplated elsewhere in the agreement as to other obligations owed under the agreement. Indeed, Paragraph III(A)'s provision for the payment of attorneys fees and its characterization of surety obligations as "joint and several" clearly contemplates litigation and the enforcement of the MSA. Nevertheless, the contract is silent as to either a default provision or a notice of default requirement, or obligation to defend, as it regards Habetz. Pursuant to the MSA, USF&G is obligated to do nothing more than demand payment, and Habetz is obligated to "place [USF&G] in funds." See

-15-

MSA, ¶III(B).  For this Court to read into the MSA an underlying requirement to defend, and thus a requirement for notice of default of that obligation to defend, by looking to the general provisions of the Louisiana Civil Code and superimposing those general provisions onto the specific provisions of the contract – which would create more onerous obligations on the part of USF&G than were negotiated by the parties – would be overreaching.

This Court's understanding of Habetz's argument is further strengthened by the fact that *Habetz cites no case law* supporting the principle that a general codal article can be read into a contract – the law between the parties – *to increase or alter the obligations* of the parties. Furthermore, Habetz does *not* argue the formation of a surety agreement containing no obligation to defend and/or notice of default of that obligation is contrary to the public policy of Louisiana, and, indeed, this Court can envision no scenario in which such an agreement could be contrary to public policy.  This Court's conclusion is further bolstered by the fact that in its answer, Habetz acknowledges its general obligation to pay indemnification to USF&G; reiterates this position in the parties' Rule 26(f) Report; and has failed to respond to a Request for Admission specifically directed to the issue of whether Edmund Habetz signed the Master Surety Agreement and thereby became bound by it.[20]

With respect to the issue of liability for indemnification, this Court concludes Habetz bears the burden of proof at trial to show the MSA does not require Habetz to indemnify USF&G.  Thus,

---

[20] The failure to respond to a request for admission has the force and effect of an admission pursuant to Rule 36 of the Federal Rules of Civil Procedure:

> **3) *Time to Respond; Effect of Not Responding.*** A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

Fed.R.Civ.P. 36(a)(3).

USF&G must only point to an absence of evidence on the part of Habetz regarding this issue to satisfy its initial burden of proof. This Court concludes USF&G satisfies its initial burden by presenting the applicable provisions of the MSA and arguing the MSA entitles it to indemnification. The burden then shifts to Habetz to show the MSA, in fact, does not entitle USF&G to indemnification. Here, Habetz has failed to satisfy its burden, inasmuch as it argues only that the general code articles of the Louisiana Civil Code require USF&G to undertake certain obligations not contained in the contract negotiated by the parties. Habetz's evidence is not sufficient to defeat summary judgment in USF&G's favor.

It is axiomatic that parties can contract as between or among themselves and that the contract becomes the law as between or among those parties, unless the contract is so onerous as to be against public policy or runs afoul of the public policy of the applicable state. The MSA in this case does not limit the "counsel fees" to *reasonable* counsel fees, although it clearly could have done so. Habetz points to no jurisprudence which states a contract without such limiting language is so onerous as to be unenforceable. Nor does Habetz argue the actual application of MSA in this case is, again, so onerous as to be unenforceable. Whereas this Court does have some question as to why the fees which fall squarely within the obligation to indemnify are $156,102.92, and those incurred thereafter range only from $1,800 to $7,010.10, Habetz has provided no factual basis or argument that the larger initial costs were not reasonable or as USF&G argues, were reflective of the need to familiarize Ms. Adams with the file on quite short notice, an education required initially and enuring to the benefit of Habetz and USF&G as to the later disputes, particularly in light of the consistently desirable results she obtained.

Considering the foregoing, this Court concludes there are no genuine issues of material fact

regarding Habetz's obligation to indemnify USF&G under the MSA, and USF&G's motion for summary judgment on the issue of Habetz's liability for indemnification is GRANTED.  Under the clear terms of the MSA, USF&G is entitled to summary judgment against Habetz for all losses, expenses and attorneys' fees incurred to date on the Eunice Nursing Home bonds and the St. Martin's bonds, and for those losses, expenses, and attorneys' fees incurred to date in the effort to enforce the terms of the MSA.  *See Hartford Acc. & Indem. Co. v. La. Minority, Inc.*, 522 So. 2d 1154, 1157 (La. App. 4th Cir.), *writ denied*, 523 So. 2d 1154 (La. 1988) (enforcing provision in indemnity agreement requiring the indemnitor to indemnify surety for all attorneys' fees and costs).

### 2.      Is USF&G entitled to summary judgment on issue of amount of damages?

#### a.      Were Payments Made in Good Faith?

USF&G argues it is entitled to summary judgment on the issue of the amount of damages sought pursuant to the clear and unambiguous terms of the MSA:

> IV      (A) The liability of the UNDERSIGNED hereunder *shall extend to and include all amounts paid by SURETY in good faith under the belief that: (1) SURETY was or might be liable therefore: (2) such payments were necessary or advisable to protect any of SURETY'S rights or to avoid or lessen SURETY'S liability or alleged liability;*

*See* MSA, ¶IV(A) (emphasis added).

Although the foregoing provision appears to contemplate "amounts paid by [USF&G] in good faith," Section III(A) makes clear the obligation of Habetz to indemnify USF&G arises *upon demand of USF&G to payment* and that Habetz is obligated to "place [USF&G] in funds before [USF&G] makes any payment."  Thus, Habetz is required to indemnify USF&G before USF&G makes payment under the MSA.  Furthermore, in the instant case, it does not appear USF&G has fully paid the Kreb's firms' invoices.

-18-

Pursuant to the foregoing provisions, USF&G contends it is only required to show the charges were incurred in good faith and to provide an itemized statement of payments or other evidence of payments in order to provide *prima facie* evidence of the fact and extent of the liability of Habetz. Accordingly, USF&G submits the affidavit of Susan Weinstock, with attached invoices and time entries of the Krebs firm for work performed on both the underlying matters and the instant indemnity action.  In her affidavit, Ms. Weinstock attests the "expenses have been incurred in the good faith belief that such payments are necessary and advisable to protect USF&G's rights under the MSA. . . The fees charged to USF&G by its counsel are based on a pre-determined, fixed hourly rate that is in line with the customary rate paid by USF&G for experienced surety counsel in the geographic area."[21]

Alternatively, USF&G argues the fees incurred are reasonable pursuant to the "lodestar" analysis employed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The lodestar analysis requires consideration of twelve factors, as follows: (1) time and labor involved; (2) novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) preclusion of other employment; (5) the customary fee for the legal work performed; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the legal work; (8) the time involved and the results obtained; (9) the experience, reputation and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  The Fifth Circuit has held the lodestar is presumptively reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 2641 (1992).

---

[21] See Affidavit of Ms. Weinstock, attached as Exhibit "B" to USF&G's Motion for Summary Judgment, Doc. 58, at ¶¶11-12.

Applying the *Johnson* factors to this case, USF&G argues the underlying legal matters, particularly the Eunice Nursing Home arbitration, required a substantial amount of time and labor. The Eunice arbitration involved the culmination of more than two years of discovery, and the Krebs firm was brought into the matter approximately two weeks prior to the scheduled arbitration. USF&G argues Ms. Adams had to quickly digest the discovery that had already been conducted in preparing its legal and fact defenses prior to the first scheduled arbitration. Following the rescheduling of the arbitration, the Krebs firm had more time to fully develop USF&G's defenses and to discover the scope of the continually evolving and complex nature of the Nursing Home's claim. This included analyzing complicated construction defect claims raised by the Nursing Home and preparing defenses to those claims, which proved to be a document-intensive and factually complex task requiring extensive time and labor. USF&G contends preparation for numerous potential fact and expert witnesses was required, as well as preparation for two mediations and the briefing of an ultimately successful summary judgment motion.

The Court notes Ms. Adams, a surety attorney with more than ten years' experience, was ultimately successful in raising a prescription issue and in securing USF&G's dismissal from the arbitration matter. Before the ruling of the arbitration panel, however, extensive briefing was conducted on the prescription issue, and USF&G was required to respond to the Nursing Home's claims in opposition to the summary judgment motion, in which the Nursing Home urged a novel and unique argument to attempt to defeat summary judgment.

USF&G argues the indemnity action against Habetz has also been time-consuming and labor-intensive, given that a relatively simple indemnity proceeding morphed into litigation involving legal malpractice and breach of contract and/or fiduciary duty against USF&G's original tender counsel

and its current counsel.[22]

Considering the evidence presented by USF&G, this Court concludes USF&G has satisfied its initial burden of showing an absence of evidence demonstrating the fees and expenses it seeks are unreasonable.  In addition to presenting the Krebs invoices, Ms. Adams's testimony that the fees charged were necessary and reasonable under the circumstances, and Susan Weinstock's[23] affidavit attesting that the fees incurred by USF&G were "in line with the customary rate paid by USF&F for experienced surety counsel in the geographic area,"[24] USF&G goes one step further and argues the fees are reasonable under the lodestar analysis prescribed by the Fifth Circuit in *Johnson, supra*. This Court finds, pursuant to USF&G's argument and evidence, that USF&G has made a *prima facie* case to establish the fees it incurred on the underlying legal matters appear to be reasonable and charged in good faith.  The burden then shifts to Habetz to show the amounts sought are unreasonable.

In response, Habetz produces no countervailing evidence to show the documentation provided by USF&G is deficient.  Indeed, USF&G contends that, at the deposition of Edmund Habetz on January 22, 2008, Mr. Habetz testified he was "satisfied with the completeness of the documentation

---

[22] This Court has already resolved the breach of contract and/or breach of fiduciary duties issues brought against William L. Melancon & Associates, USF&G's original tender counsel.

[23] Ms. Weinstock is a Technical Director for Traveler's, the successor-in-interest for USF&G.

[24] It appears USF&G has not yet paid these invoices, and under the MSA, it is not required to do so before seeking payment from Habetz.  See MSA at III(B):

> In order to exonerate or indemnify SURETY, UNDERSIGNED shall upon demand of SURETY, place SURETY in funds *before SURETY makes any payment*; such funds shall be, at SURETY'S option, money or property, or liens or security interests in property. (The amount of such money or property or the value of the property to become subject to liens or security interests, shall be determined by SURETY.)

(emphasis added).

produced by USF&G regarding the amount it seeks to recover under the MSA."[25]  Rather, Habetz

argues Susan Weinstock is not qualified to offer an opinion that the fees, incurred by USF&G in the

current litigation concerning the enforcement of the indemnification provision, are reasonable and

customary, inasmuch as Ms. Weinstock is not an attorney and has no specialized knowledge

concerning such matters.  Additionally, Habetz argues the $44,643.40 amount USF&G seeks in

connection with its prosecution of the instant indemnification action is excessive as the underlying

action has not been discovery-intensive and a significant amount of work has not been performed.

In its brief, Habetz is silent as to the issue regarding the amount of fees incurred in the underlying

legal matters, although in its Answer to USF&G's Complaint and its in the parties' Rule 26(f)

Report, Habetz argues the overall invoicing in the underlying lawsuits is excessive under the

circumstances.

     A careful reading of Habetz's response shows Habetz merely argues USF&G has not properly

supported its claim to the amounts sought.  Thus, in essence, Habetz argues an *absence of evidence*

on the part of USF&G regarding USF&G's entitlement to the amounts sought.  The problem,

however, is *Habetz bears the burden of proof at trial and must come forward with evidence to rebut

USF&G's prima facie showing on the claim for damages*.  Habetz cannot rely on an argument that

USF&G has insufficient evidence supporting its claims for fees and expenses when Habetz bears the

burden of proof on this issue at trial.  Habetz's argument that the charges are "excessive," with

nothing more, is insufficient to defeat USF&G's otherwise properly supported motion for summary

judgment.

     Considering the foregoing, this Court Habetz fails to satisfy its burden of showing there are

---

[25] A copy of Mr. Habetz's deposition transcript has not been provided.

genuine issues of material fact regarding the liability of Habetz to pay the amounts sought by

USF&G pursuant to the MSA.  Therefore, USF&G's motion for summary judgment on the amount

of damages sought from Habetz is GRANTED.  USF&G is entitled to summary judgment against

Habetz for all losses, expenses and attorneys' fees incurred to date on the Eunice bonds and the St.

Martin's bonds, and for those losses, expenses, and attorneys' fees incurred to date in the effort to

enforce the terms of the MSA, which totals $203,525.73.[26]

## IV.    Joint and Several Liability

For the reasons stated herein, this Court concludes E.L. Habetz Builders, Inc. is liable for the

amounts sought by USF&G.  That finding, however, does end the inquiry.  USF&G argues the MSA

was executed individually by Edmund Habetz and Cheryl Habetz and by Edmund Habetz on behalf

of E.L. Habetz Builders, Inc.  USF&G argues the foregoing "Habetz indemnitors" are liable for the

amounts now due.  This Court, therefore, is required to determine exactly which parties are

responsible for the amounts deemed due and owing.

Paragraph I(A) of the MSA states:

> This *AGREEMENT binds UNDERSIGNED and the heirs, personal
> representatives, successors and assigns thereof, **jointly and severally**, to*
> SURETY in connection with all BOND(S) heretofore or hereafter
> executed, provided or procured by SURETY in behalf of PRINCIPAL in
> any penal sum and in favor of any obligee(s):

MSA, at ¶I(A).

Habetz does not dispute that the signatures of Edmund and Cheryl Habetz on the MSA are

authentic.  Furthermore, Habetz makes no policy argument against the provision of the MSA which

clearly states that the "UNDERSIGNED" – which includes Edmund and Cheryl Habetz, as well as

---

[26] This amount assumes Habetz has already paid USF&G *$14,000* toward the amount it owes and is therefore entitled to a credit in the amount of $14,000.

Habetz Builders – as well as the heirs, personal representatives, successors, and assigns of Habetz Builders, are *jointly and severally liable* for all amounts incurred by USF&G.

Considering the foregoing, this Court concludes Edmund and Cheryl Habetz, individually, are liable to USF&G jointly and severally with E.L. Habetz Builders, Inc. for the amounts awarded herein.

## V.   Conclusion

This Court concludes there are no genuine issues of material fact regarding Habetz's liability under the MSA, that USF&F has carried its burden to establish under the facts and law that it is due the relief sought, and that Habetz has failed to satisfy its burden of establishing a genuine issue of material fact or an error in law as to the relief sought by the movant, USF&G. Therefore, USFG's Motion for Partial Summary Judgment is GRANTED in its entirety, and Habetz E. L. Habetz Builders, Inc. and its principals Edmund L. Habetz and Cheryl A. Habetz are liable jointly and severally to USF&G in the amount of $203,525.73.[27]

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 2 X day of _____ , 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[27] This amount includes the $172,882.33 sought by USF&G on the underlying legal matters, the $44,643.40 sought to prosecute the instant indemnification action, minus a credit for $14,000.00