**RECEIVED**

MAR 2 8 2008

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES FIDELITY & GUARANTY COMPANY | CIVIL ACTION NO. 06-895 |
| VERSUS | JUDGE DOHERTY |
| E. L. HABETZ BUILDERS, INC., ET AL | MAGISTRATE JUDGE METHVIN |

**MEMORANDUM RULING ON MOTION FOR
SUMMARY JUDGMENT FILED BY MELANCON & ASSOCIATES, L.L.C.,
WILLIE L. MELANCON AND WILLIAM L. MELANCON**

Pending before this Court is the Motion for Summary Judgment [Doc. 58], filed by third-party defendants Melancon & Associates, L.L.C., Willie L. Melancon, and William L. Melancon [hereinafter referred to collectively as "Melancon"]. The motion is opposed [Doc. 67], and Melancon has filed a reply brief [Doc. 81]. For the following reasons, Melancon's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

I. **Factual and Procedural Background**

The parties are referred to this Court's Memorandum Ruling on USF&G's Motion for Partial Summary Judgment, wherein this Court sets forth in meticulous detail the relevant facts and procedural history of this case.[1] Additional facts that are pertinent to the instant motion are set forth hereinbelow.

*The Eunice Nursing Home Arbitration*

As the Court notes in the previous ruling, The Eunice Nursing Home matter involved arbitration of a claim against Habetz for alleged construction defects. Upon notification of the claim

---

[1] The Court notes for purposes of this ruling, the Habetz entities – E. L. Habetz Builders, Inc., Edmund L. Habetz and Cheryl A. Habetz – will be hereinafter referred to collectively as "Habetz," unless otherwise noted.

and pursuant to the Master Surety Agreement in effect between Habetz and USF&G, Habetz hired Melancon to defend Habetz and USF&G.  After a mediation was set, USF&G retained another Louisiana attorney, Alberta Adams of the Krebs, Farley, and Pelleteri law firm (the "Krebs firm"), to represent the sole interests of USF&G.[2]  At some point, Ms. Adams came to believe certain affirmative defenses had not been pled by Melancon on behalf of USF&G, most particularly, an affirmative defense of prescription.  Despite the fact the American Arbitration Association ("AAA") has no formal procedures for filing summary judgment motions, no time requirements for filing same, no requirements of proof, and no code of procedure, Ms. Adams filed a motion for summary judgment raising the prescription defense and other defenses.

The crux of the prescription defense argued the Nursing Home's claim against USF&G was time-barred under the terms of the Eunice bonds.  Extensive briefing was conducted on the motion for summary judgment, and the Nursing Home urged a novel legal theory to attempt to defeat the motion.  Ultimately, approximately seven months after it was filed, the arbitration panel granted USF&G's motion for summary judgment without assigning reasons, and USF&G was dismissed from the arbitration. The Krebs firm billed USF&G approximately $156,102.92 in attorney's fees, expert fees, costs, and other expenses in the Eunice Nursing Home arbitration.

Following USF&G's dismissal from the arbitration proceeding, the remaining parties settled the Eunice Nursing Home's claims at a second mediation.  Habetz contributed $25,000.00 to the ultimate settlement of the matter.

---

[2] Melancon continued representing the interests of Habetz, while Ms. Adams represented the interests of USF&G.

### The Brown's Drywall Litigation

In connection with its issuance of the St. Martin's bonds to Habetz, USF&G was named a defendant in a lawsuit filed by Brown's Drywall & Coating, Inc. ("the Brown's Drywall litigation"), a subcontractor on the School Board Project. Melancon was retained by Habetz to represent both Habetz and USF&G.

After the filing of Brown's Drywall's petition, Melancon contends he obtained an informal extension of time to respond to Brown's Drywall's petition on behalf of both Habetz and USF&G from Sharon Kyle, counsel for Brown's Drywall. Melancon sent Ms. Kyle a letter memorializing their agreement, but failed to state in the letter he represented both Habetz and USF&G. Rather, Melancon stated only that he represented Habetz. In the letter, Melancon states:

> It is my further understanding that you agreed not take any adverse action, including, any motion for preliminary default or confirm any judgment of default or other adversary proceeding without first contacting me. If the foregoing meets with your understanding of our agreement, please sign this letter below and return it to me with your signature.[3]

The copy of the letter in the record contains the signature of Ms. Kyle. Some time later, Ms. Kyle took a default judgment against USF&G in the amount of $11,932.05, plus interest, costs, and attorney's fees.

USF&G terminated Melancon shortly thereafter and retained Ms. Adams of the Krebs firm to represent its interests. Prior to the time he was terminated, however, Melancon challenged the taking of the default judgment by filing a "Petition for Temporary Restraining Order, Preliminary and Permanent Injunction, or Alternatively, Motion for New Trial," in which he sought to set aside the default judgment on several grounds, including grounds it was not taken in good faith and

---

[3] See March 16, 2004 letter from Melancon to Sharon B. Kyle, attached as exhibit to Habetz's memorandum in opposition to Melancon's motion for summary judgment.

USF&G had not been permitted to plead its substantive, meritorious defenses.

Prior to the court's ruling on the foregoing motion, however, Ms. Adams of the Krebs firm settled the case with Brown's Drywall for $1,800.00.

In the main demand in this case, USF&G seeks indemnification from Habetz for the incurred legal fees, costs and expenses in connection with *four* separate underlying legal matters, including the Eunice Nursing Home arbitration and the Browns' Drywall litigation.  Habetz filed an Answer and Third-Party Demand, wherein it alleges third-party claims against Melancon seeking payment from Melancon for those fees and expenses USF&G is seeking from *Habetz* in connection with *two* of the matters, namely, the Eunice Nursing Home arbitration and the Brown's Drywall litigation.

In its Third-Party Complaint, Habetz alleges the following claims against Melancon: (1) a "negligence" claim[4] for Melancon's allegedly incompetent legal work performed in the Eunice Nursing Home and Brown's Drywall matters, which resulted in the Krebs firm's involvement and subsequent legal fees, for which – Habetz argues – USF&G would not be seeking reimbursement from Habetz had Melancon competently performed his function as counsel for Habetz and USFG; (2) an associated claim for "economic losses incurred equal to the claims being advanced by USF&G;" (3) a breach of contract claim for economic losses in the amount of $82,600.00, which Habetz claims it paid Melancon to represent it in the Eunice Nursing Home and Brown's Drywall matters, "of which only portions of said amount were reasonable considering the competency of the work performed;"[5] (4) a claim for "economic losses in the form of attorneys' fees in having to pursue

---

[4] Habetz does not cite to any source of law for this "negligence" claim.

[5] It is unclear to this Court –and apparently, to Melancon as well, as pointed out in Melancon's motion for summary judgment – whether Habetz is also raising a claim of entitlement to the $25,000.00 amount it tendered as part of the ultimate settlement of the Eunice Nursing Home matter.  In its Third-Party Demand against Melancon, Habetz alleges:

-4-

this claim for indemnity against Melancon;" (5) a claim for "non-pecuniary damages" in an amount to be determined at trial, "which are general damages as a result of the ordeal;" and (6) a claim for "economic damages in the form of lost business opportunity," in that, due to the continued difficulty in the defense of the claims, USF&G refused to honor its commitment to provide Habetz with bonding services, which resulted in a five-month period in which Habetz was without bonding services and was unable to bid on jobs.

In the instant motion for summary judgment, Melancon argues all claims against him should be dismissed primarily because Habetz would be unable to prove up an essential element common to all claims made against him. Melancon argues Habetz failed to designate an expert witness to testify to the standard of care owed in legal malpractice cases, thus, Habetz will be unable to meet its burden of establishing both the duty of care owed in this case and a breach of that duty by Melancon. Thus, Melancon seeks dismissal of all claims alleged by Habetz in its third-party demand against Melancon. Each claim is set forth in greater detail hereinbelow. As the Court makes clear in this ruling, Melancon is not entitled to relief on all claims alleged against him, however limited relief is owed.

## II.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory

---

In addition, but for the negligent handing of the action in the Eunice Nursing Home matter, the entire proceeding escalated driving up the entire value of the claim by Eunice. Furthermore, Habetz was called upon to tender the amount of $25,000 in settlement of the claims.

See Habetz's Answer and Third Party Demands, Doc. 12, at ¶53.

This Court concludes, to the extent the foregoing statements constitute a claim of entitlement to the $25,000.00 amount Habetz continued toward the Eunice Nursing Home arbitration, such claim is a claim for legal malpractice for the reasons set forth in more detail in later sections of this ruling.

judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56(c).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> The plain language of Rule 56(c) <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential

element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

[The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.  We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.  We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Id.*  To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is

not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.   Law and Analysis

### A.   *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

As jurisdiction in this matter is premised upon 28 U.S.C. § 1332 (diversity of citizenship), Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). As such, the Court is duty-bound to apply Louisiana law. The Fifth Circuit's guidance to District Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court. In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case. . . .
>
> [The court must] employ the appropriate Louisiana civilian methodology to decide the issues presented the way that [the court] believe[s] the Supreme Court of Louisiana would decide them. Under Louisiana's Civil Code, the only authoritative sources of law are legislation and custom. Thus, in Louisiana, courts must look first and foremost to the state's primary sources of law: the state's constitution, codes, and statutes. As we have previously recognized, the primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts. Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana. Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante* is merely a secondary law source. Therefore, while it is true that we will not disregard Louisiana appellate court decisions unless we are convinced by other persuasive data that the highest court of the state would decide otherwise, particularly if numerous decisions are in accord on a given issue - the so-called *jurisprudence constante* - we are not strictly bound by them.

*American International Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (internal citations and quotations omitted).

### B.   Melancon's Motion for Summary Judgment

In the instant motion, Melancon seeks summary judgment in its favor "dismissing [Habetz's] Third-Party Demand" on grounds Habetz failed to designate an expert witness on the standard of care required in legal malpractice lawsuits prior to the deadline for the designation of expert witnesses, which, pursuant to this Court's scheduling order, was December 26, 2007.[6] Melancon argues that because Habetz failed to designate an expert, it cannot meet its burden of establishing both the duty of care owed in this case and a breach of that duty by Melancon.  Furthermore, Melancon argues the allegations of malpractice by Habetz do not constitute "obvious" or "egregious" instances of malpractice, such that an expert would not be required for Habetz to sustain its burden of proof.  Melancon therefore argues Habetz cannot prove its malpractice claims and summary judgment should be granted in its favor on *all* of Habetz's claims against it.  In connection with the legal malpractice/breach of contract claims, Habetz asserts a claim for "economic losses incurred equal to the claims being advanced by USF&G."

On a procedural note, this Court notes that, in its motion, Melancon addresses only the legal malpractice/breach of contract claims against it in connection with the Eunice Nursing Home arbitration, the Brown's Drywall litigation, and the associated claims for economic losses in an amount equal to that sought by USF&G from Habetz, and the $82,600 in legal fees Habetz paid Melancon in the underlying legal matters.  Melancon does *not* address or otherwise brief its argument it is entitled to summary judgment on the following "claims" identified by Habetz as: (1) Habetz's claim for economic losses in the form of attorneys' fees in having to pursue this claim for indemnity against Melancon; (2) Habetz's claim for non-pecuniary damages for having to endure "[this] ordeal;" or (3) Habetz's claim for economic damages in the form of lost business opportunity.

---

[6] *See* Doc. 52.

As neither party has addressed the true nature of these "claims" and whether they exist as separate and independent causes of action from the malpractice alleged, and if so, upon what, if any, basis in law, or fact, these "claims" are not properly before the Court, movant is not entitled to relief on these unaddressed "claims."

In its opposition brief, Habetz argues that its claims against Melancon seek damages under *two legal theories*, that is, (1) the *malpractice claims* pursuant to negligence, i.e., tort, against Melancon in the Eunice Nursing Home and Brown's Drywall matters, which led USF&G to seek indemnification for the attorney fees, costs and expenses it incurred by retaining the Krebs firm from Habetz, which Habetz argues would not have occurred had Melancon performed competently in his representation of both Habetz and USF&G; and (2) a *breach of contract* claim against Melancon for amounts paid to Melancon, totaling $82,600.00, of which Habetz argues "only portions . . . were reasonable considering the competency of the work performed." Habetz argues Melancon's motion for summary judgment addresses only the *malpractice* claims against Melancon and not the *breach of contract* claim.

Habetz next argues it intends to use the lay testimony of Ms. Adams, the Krebs attorney who took over the representation of USF&G in the Eunice Nursing Home and Brown's Drywall matters, as an "expert in the field of suretyship law." Habetz argues Ms. Adams is qualified to testify to Melancon's deficient performance in his representation of USF&G. Furthermore, with respect to the Brown's Drywall matter, Habetz argues no expert is necessary for Habetz to carry its burden on the legal malpractice claim, inasmuch as permitting a default judgment is an "obvious" and "egregious" instance of legal malpractice and the Court can so conclude without the necessity of an expert.

C.      **Law and Analysis**

1.      **Is breach of contract claim different from negligence claim for purposes of legal malpractice?**

As an initial matter, this Court addresses Habetz's argument that Melancon ignores Habetz's breach of contract claim as a claim separate and independent from Habetz's negligence/malpractice claims. Although the parties have not extensively briefed this issue (and Habetz not at all), it is clear the claims brought by Habetz against Melancon – whether couched in terms of tort or contract – are claims for legal malpractice and must be analyzed accordingly for purposes of this motion.

In *Kozan v. Comstock*, 270 F.2d 839, 844-45 (5th Cir. 1959), a Fifth Circuit case applying Louisiana law, Judge Wisdom explained why a malpractice suit (medical or legal) is a tort. In *Kozan*, Judge Wisdom wrote:

> *It is the nature of the duty breached that should determine whether the action is in tort or in contract.* To determine the duty one must examine the patient-physician relationship. It is true that usually a consensual relationship exists and the physician agrees impliedly to treat the patient in a proper manner. *Thus, a malpractice suit is inextricably bound up with the idea of breach of implied contract. However, the patient-physician relationship, and the corresponding duty that is owed, is not one that is completely dependent upon a contract theory.* There are instances in which the relationship exists though there is clearly no contractual relationship between the patient and the physician. Thus, the patient may be incapable of contracting or a third person may have contracted with the physician for the treatment of the patient. *Even in these instances in which no contract is present the physician still owes a duty to the patient. The duty of due care is imposed by law and is something over and above any contractual duty. Certainly, a physician could not avoid liability for negligent conduct by having contracted not to be liable for negligence. The duty is owed in all cases, and a breach of this duty constitutes a tort. On principle then, **we consider a malpractice action as tortious in nature whether the duty grows out of a contractual relation or has no origin in contract**. This view that malpractice suits are tortious in nature probably represents the majority view.*
>
> We do not mean to say that there can never be a contractual action against a physician. Generally, a physician undertakes only to utilize his best skill and judgment. *When he negligently fails to do so he may have committed a tort. However, a physician may, by express contract, agree to effect a cure or warrant that a particular result well be*

> *obtained. In such instances an action in contract may lie against a physician. However, in the absence of a special warranty or contract, a malpractice suit against a physician is an action in tort and is subject to the limitation period for tort actions.*

270 F.2d at 844-45. *See also Sciacca v. Polizzi*, 403 So.2d 728, 730 (La. 1981) (Louisiana Supreme Court quotes Judge Wisdom's *Kozan* language with approval in medical malpractice case); *Phelps v. Donaldson*, 150 So.2d 35 (La. 1963) (writing for a unanimous Court, Chief Justice Fournet held when a physician undertakes treatment of a case he doesn't guarantee a cure and law does not impose an implied undertaking to cure, but only an undertaking to use ordinary skill and care).

Although the *Kozan* and *Sciacca* cases involved medical malpractice, Judge Wisdom's explanation is instructive and has since been applied by Louisiana district courts to cases involving legal malpractice claims. In *Cherokee Restaurant, Inc. v. Pierson*, 428 So.2d 995, 998 (La. App. 1st Cir. 1983), the court reasoned:

> Conceptually, the action for legal malpractice is no different than the action for medical malpractice. *Both entail a deviation from the accepted standard of care of the profession. Although the attorney-client relationship gives rise to an implied warranty of the attorney to use his best professional skill and judgment, this duty is legal rather than contractual in nature, and a breach of this duty amounts to a tort.* See *Ramp v. St. Paul Fire and Marine Insurance Company*, 263 La. 774, 269 So.2d 239 (1972); *Corceller v. Brooks*, 347 So.2d 274 (La.App. 4th Cir.1977). ***Only when an attorney breaches an express warranty of result does an action for breach of contract arise.***

(emphasis added). *See also Sturm v. Zelden and Zelden*, 445 So.2d 32, 34 (La. App. 4th Cir. 1984), (citing *Cherokee Restaurant*); *Corceller v. Brooks*, 347 So.2d 274 (La. App. 4th Cir.1977) (noting nature of legal malpractice claim as tortious in nature without express warranty or guarantee for particular performance, and finding no such warranty or guarantee existed).

This Court further notes the Fifth Circuit's instruction in *Davis v. Parker*, 58 F.3d 183, 188 (5th Cir. 1995) that "[g]enerally, legal malpractice claims are those bases of liability that are unique to and arise out of the rendition of legal services. . . . [c]learly within the definition of legal

malpractice is the negligent rendering of legal services."  Moreover, Louisiana law defines legal services broadly "to include 'services provided by one in the ordinary course of the practice of [law] on behalf of another.'"  *Gerdes v. Estate of Cush,* 953 F.2d 201, 205 n. 8 (5th Cir.1992), *quoting Jensen v. Snellings,* 841 F.2d 600 (5th Cir.1988).  Thus, legal malpractice actions have traditionally addressed the quality of the professional service.[7]

Applying the foregoing legal principles to the facts of the instant case, this Court notes Habetz attaches no contract defining the terms of Melancon's representation of Habetz in any of the matters giving rise to the instant litigation, nor does Habetz allege Melancon breached an express warranty of result.  Neither does Habetz argue Melancon guaranteed a certain result in either the Eunice Nursing Home arbitration or the Brown's Drywall litigation.  Nor does Habetz argue Melancon, in fact, failed to produce a guaranteed result.  Furthermore, it is clear the claim noted as a breach of contract claim alleged by Habetz against Melancon – whether couched in terms of tort or contract – is a claim that addresses the *quality of the legal services* provided by Melancon to Habetz.  Therefore, this Court concludes Habetz's breach of contract claim is actually a tort claim for legal

---

[7] This Court notes Melancon cites Louisiana Revised Statute 9:5605 – the Louisiana legal malpractice statute – for the proposition that all causes of action against an attorney for legal malpractice, whether couched in tort or contract, have been subsumed under the statute.  While this may be true, this Court notes the *purpose* of Section 9:5605 is to address the *prescriptive period for the filing of a claim for legal malpractice*, not to define a legal malpractice claim as one sounding in either tort or contract.

Louisiana Revised Statute §9:5605(A) states:

> No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

malpractice and must be analyzed as such for purposes of this motion.

## 2.     Standard for Legal Malpractice Claims

As previously noted, this Court notes neither Habetz nor Melancon attaches a contract defining the terms of Melancon's representation of Habetz in any of the matters giving rise to the instant litigation.  Thus, Habetz does not rely on the specific terms of any contract or agreement to allege and/or prove its allegations that Melancon committed malpractice in rendering legal services to Habetz.  Therefore, pursuant to the *Erie* doctrine, this Court looks to the law of the State of Louisiana for guidance in analyzing Habetz's claims.

Under Louisiana law, to establish a claim for legal malpractice, a plaintiff must prove: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence.  *Costello v. Hardy*, 864 So.2d 129, 138 (La. 2004), citing *Finkelstein v. Collier*, 636 So.2d 1053, 1058 (La. App. 5th Cir. 1994); *Barnett v. Sethi*, 608 So.2d 1011, 1014 (La. App. 4th Cir. 1992), *writs denied*, 613 So.2d 993, 994 (La.1993).  As the Louisiana Supreme Court has stated: "An attorney is obligated to exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality. He is not required to exercise perfect judgment in every instance."  *Ramp v. St. Paul Fire & Marine Ins. Co.*, 269 So.2d 239, 244 (La. 1972).

To succeed on a negligence-based malpractice claim, a plaintiff must demonstrate the attorney failed to exercise the degree of care, skill, and diligence that would be exercised by a prudent practicing attorney in his locality.  *See Nelson v. Waldrup*, 565 So.2d 1078, 1079 (La. App. 4th Cir.1990), *citing Ramp v. St Paul Fire & Marine Ins. Co.*, 269 So.2d 239 (La.1972).

Melancon argues Habetz must have an expert to prove the standard of care inherent in the

requisite proof. Melancon relies upon two Fifth Circuit cases and several Louisiana state district court cases in support of this argument. Specifically, Melancon cites *Curb Records v. Adams and Reese*, 203 F.3d 828 (5th Cir. 1999) and *Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990) for the general proposition that "[i]in most legal malpractice cases, 'expert testimony is necessary to establish the standard of care since only an attorney can competently testify to whether the defendant comported to the prevailing legal standard.'" *Geiserman*, 893 F.2d at 793-94.

Review of the foregoing cases, however, shows the *Curb Records* opinion was not selected for publication in the Federal Reporter. Although Melancon properly points this out and provides a copy of the case to this Court, Rule 47.5 of the Fifth Circuit Rules makes clear that unpublished opinions are not precedent except for the limited circumstances – none of which are applicable in this case – set forth in Fifth Circuit Rule 47.5.4.[8] Therefore, this Court cannot rely on the *Curb Records* opinion to analyze the legal malpractice claims in the instant case.

Moreover, review of the *Geiserman* opinion shows it is based on the *Texas* state law of malpractice. Again, pursuant to the *Erie* doctrine, this Court must apply the substantive law of the state of Louisiana, and a Fifth Circuit opinion applying Texas state law is of little benefit to this

---

[8] Fifth Circuit Rule 47.5.4 states:

**47.5.4 Unpublished Opinions Issued on or After January 1, 1996.**

Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, notice, sanctionable conduct, entitlement to attorney's fees, or the like). An unpublished opinion may be cited pursuant to FED. R. APP. P. 32.1(a). The party citing to an unpublished judicial disposition should provide a citation to the disposition in a publicly accessible electronic database. If the disposition is not available in an electronic database, a copy of any unpublished opinion cited in any document being submitted to the court must be attached to each copy of the document, as required by FED. R. APP. P. 32.1(b). The first page of each unpublished opinion bears the following legend:

    Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should
    not be published and is not precedent except under the limited circumstances set forth in
    5TH CIRCUIT RULE 47.5.4.

Court in analyzing the claims raised in the instant motion.[9]

Although the Louisiana Supreme Court has not squarely addressed the issue, several Louisiana district courts have held the failure to retain an expert to prove a legal malpractice claim results in dismissal of the claim, unless the alleged malpractice is so obvious or egregious that expert testimony is unnecessary. *See, e.g., Milligan v. Keele*, 610 So. 2d 1087, 1089 (La. App. 3rd Cir. 1992) (appellate court upheld trial court's dismissal of reconventional demand for legal malpractice where plaintiff did not produce expert at trial who could testify that counsel's performance fell below the applicable standard of care in each of the alleged actions or inactions complained of); *Houillon v. Powers and Nas.*, 530 So.2d 680, 682 (La. App. 4th Cir. 1988) (noting "[w]ith the complexity and diversity of contemporary law, litigation, and legal practice, it should not be surprising to find legal malpractice cases in which expert testimony as to the standard of care is essential. This is such a case."); *Reed v. Verwoerdt*, 490 So.2d 421, 427 (La. App. 5th Cir. 1986) (judgment rendered in favor of attorneys sued for legal malpractice where case involved complicated issues regarding the standard of care an attorney must meet in devising contingent fee contracts based upon a structured settlement and complainant did not retain experts).

Certain Louisiana district courts have added an additional exception to the general rule, holding that *where the trial court is familiar with the standards of practice in its community*, it is competent to make determinations regarding legal malpractice without the necessity of an expert, to wit:

Expert testimony is certainly admissible to establish the standard of care based on

---

[9] Were this Court to determine Louisiana has no corollary rule addressing the issue of the necessity of experts in legal malpractice cases, or were this Court to determine the Texas state law of legal malpractice is so substantially similar to Louisiana's law, perhaps the *Geiserman* decision could be applied to the facts of this case. It is unnecessary to consider the *Geiserman* opinion, however, because the substantive state law of Louisiana addresses this issue.

practices of attorneys in the community.  In certain cases the opinions of experts may be essential to prove the standard of care an attorney must meet. In many cases, however, the trial court, which is of necessity familiar with the standards of practice in its community, is competent to make such a determination without the assistance of expert witnesses. There may also be cases in which the failure of the practitioner to use due care under any reasonable standard of conduct may be so obvious as to make expert testimony unnecessary.

*Watkins v. Sheppard*, 278 So.2d 890, 892 (La. App. 1st Cir. 1973) (citations omitted); *See also Muse v. St. Paul Fire and Marine Ins. Co.*, 328 So.2d 698, 702 (La. App. 1st Cir. 1976) (following *Watkins*); *Schlesinger v. Herzog*, 672 So.2d 701, 708 -09 (La. App. 4th Cir. 1996) ("Where the trial court is familiar with the standards of practice in its community, or where the attorney's conduct obviously falls below any reasonable standard of care, the assistance of expert testimony may be unnecessary."), *citing Morgan v. Campbell, Campbell & Johnson*, 561 So.2d 926, 929 (La. App. 2nd Cir.1990).

Considering the foregoing, this Court concludes the law in Louisiana regarding the necessity of expert testimony in legal malpractice cases is this: The failure to retain an expert to prove legal malpractice generally results in dismissal of the claim, unless the trial court is so familiar with the standards of practice in its community and is therefore competent to make such a determination without the assistance of expert witnesses, or where the alleged malpractice is so obvious or egregious that expert testimony is unnecessary.

This Court will now address the application of this standard to the claims at issue.

### 3.      The Eunice Nursing Home Matter

In its Third-Party Demand against Melancon, Habetz alleges a claim against Melancon for legal malpractice in Melancon's handling of the Eunice Nursing Home matter. Habetz essentially argues that, had Melancon timely raised the prescription issue, USF&G would have been

immediately dismissed from the case, USF&G would never have had to hire the Krebs firm, and would, therefore, never had incurred the fees and costs charged by the Krebs firm, and USF&G would not now be seeking indemnification from Habetz for the amount of fees and costs incurred.

The initial burden is on Melancon to argue an absence of evidence showing his actions or inactions constitute legal malpractice. Because Habetz bears the ultimate burden on proof on this issue at trial, the burden then shifts to Habetz to rebut Melancon's *prima facie* case.

Melancon seeks dismissal of Habetz's claims against it for legal malpractice on grounds Habetz failed to designate an expert to testify to the standard of care in the Eunice Nursing Home matter prior to the deadline contained in this Court's Scheduling Order, thus Habetz can have no expert at trial, and without an expert at trial Habetz will, under existing jurisprudence, be unable to establish an essential element of proof and thus, cannot prevail at trial. In effect, Melancon argues the failure to retain an expert is fatal to Habetz's legal malpractice claim against him.

In rebuttal, Habetz argues that, although it did not retain a separate expert for use in its legal malpractice claims, Habetz intends to use the factual testimony of Alberta Adams, the Krebs attorney who took over the representation of USF&G in the Eunice Nursing Home and Brown's Drywall matters, as an "expert in the field of suretyship law" in order to present the argued essential element of proof. Habetz argues that, pursuant to Rule 701 of the Federal Rules of Evidence,[10] Ms. Adams

---

[10] Rule 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. 701.

is qualified to testify to Melancon's deficient performance in his representation of both Habetz and USF&G before the Krebs firm began representing USF&G.

> ### a.    Is Alberta Adams qualified as an expert in the area of the standard of care in the locality?

This Court concludes Alberta Adams, who has more than ten years of experience litigating surety cases, no doubt could qualify as an expert in the area of surety law and likely would be permitted to testify as an expert as to surety-related matters at trial. Despite the foregoing, however, Ms. Adams cannot offer expert testimony as to the *prevailing legal standards in the locality and/or the standard of legal care to be applied in this legal malpractice case*, and, in fact, specifically declined to do so at her January 18, 2008 deposition:

> Q:    I think you answered one of Mr. Bartlett's questions earlier.  You are not rendering an opinion in this case as to whether or not Mr. Melancon committed legal malpractice or breached any applicable standard of care. Correct?
>
> **A:    I am not, and I have not seen his full file to do that.**[11]

Thus, Ms. Adams specifically refused to offer any opinion regarding whether Melancon, in her estimation, committed legal malpractice, stating she did not have the necessary information to do so. Ms. Adams went on to testify, in response to a question from Habetz's counsel regarding whether Melancon had failed to do something in the case that she felt he should have done:

---

[11] This Court notes although this excerpt of Ms. Adams's deposition appears in Melancon's brief, this Court has been unable to locate this information in the actual deposition transcript provided. The transcript Melancon provided by way of supplemental motion does not contain page 203, nor does the transcript contain a word index for the Court to utilize in attempting to locate the cited testimony. Furthermore, this Court was unable to locate the testimony in the copy of the transcript provided by counsel for USF&G in connection with its Motion for Partial Summary Judgment, as it appears USF&G had no need to include this page of the transcript in its briefing. As a result, this Court does not have benefit of the cited testimony in rendering its ruling.

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, however, this Court assumes the cited testimony is accurately set forth by counsel for Melancon. This Court also notes Habetz has not objected to the testimony as set forth by Melancon.

A:      I can't characterize anything that way because I don't know the substance of communications between Mr. Habetz and Mr. Melancon. I don't know what was recommended, what was accepted, what was rejected. I don't know the details of those things.[12]

Ms. Adams further testified:

Q:      As someone who has ten-plus years' experience in the surety industry, do you feel that these types of surety defenses are critical to being raised in order to properly defend a surety company?

A:      It is the way I chose to handle this case, and I believe I handled this case properly. Do I believe the way I handle a case is always the only way to handle a case? Absolutely not. Different lawyers think differently and have different strategies. This is the way I thought it was appropriate for me to handle the case.[13]

Ms. Adams's testimony points out the pivotal distinction at play in this issue. Ms. Adams possesses certain expertise – a knowledge of surety law – however, Habetz does not wish to rely on that expertise in this instance; rather it wishes to rely on Federal Rule of Evidence 701 and thus, Ms. Adams's factual testimony flowing not from her expertise, but her personal knowledge and involvement. That factual testimony does not embrace the standard of care in the locality, but rather specifically omits any comment upon that issue. Thus, her *factual* information cannot grant Habetz its desired evidence. Additionally, Ms. Adams is not, nor does she purport to be, an expert as to the standard of care and practice within surety cases within the locality – and refused to opine on that issue when asked. Thus, Ms. Adams cannot act as the needed expert witness Habetz requires. Thus, this Court concludes Ms. Adams cannot act as an expert on the standard of care and/or the prevailing

---

[12] Although counsel for Melancon cites the transcript of Ms. Adams's deposition at page 140, page 140 does not appear in the deposition transcript filed by Melancon by way of its motion to supplement the record. Therefore, this Court does not have the benefit of the cited testimony in rendering its ruling.

[13] Although counsel for Melancon cites the transcript of Ms. Adams's deposition at page 177, page 177 does not appear in the deposition transcript filed by Melancon by way of its motion to supplement the record. Therefore, this Court does not have the benefit of the cited testimony in rendering its ruling.

legal standards in a given locality to be applied in this legal malpractice case.

>    **b.**   **Is the failure of Habetz to designate an expert in the standard of care in this legal malpractice case fatal to Habetz's legal malpractice claim in the Eunice Nursing Home arbitration?**

Given that Habetz has failed to designate an expert in the area of the standard of care for purposes of proving a legal malpractice claim, this Court must determine whether the failure of Habetz to designate an expert is fatal to its legal malpractice claim in the Eunice Nursing Home arbitration.[14]

After review of the briefs, this Court concludes – as the Court did in *Reed v. Verwoerdt*, 490 So.2d 421, 427 (La. App. 5th Cir. 1986) – the instant case "of necessity" requires expert testimony to establish the alleged malpractice of Melancon. The Eunice Nursing Home matter involved arbitration of a claim against Habetz for construction defects. The crux of Habetz's legal malpractice claim is that Melancon failed to timely raise a prescription issue that would have released USF&G from liability. The prescription issue was ultimately raised by Ms. Adams on motion for summary judgment, which was successful and resulted in USF&G being released from the lawsuit. Habetz argues that had Melancon timely raised the prescription issue, USF&G would have been immediately dismissed from the case, USF&G would never have had to hire the Krebs firm, and would, therefore, never have incurred the fees and costs charged by the Krebs firm.

Habetz's argument, however, is overly simplistic. The record shows the Eunice Nursing Home matter was not a garden-variety lawsuit, but was actually a matter pending before the America Arbitration Association ("AAA"). Pursuant to the Rules of the AAA, there are no formal procedures for filing summary judgment motions, no time requirements for filing same, no requirements of

---

[14] No request has been made for relief from the deadlines contained in the scheduling order.

proof, and no code of procedure. Ms. Adams testified the prescription arguments raised in her summary judgment motion involved complex and difficult issues that required over 108 hours of research and drafting, and she was not sure if the motion would be heard by the arbitrators prior to the final arbitration hearing. The record in this case also shows extensive briefing was conducted on the prescription issue, and that the Nursing Home urged a novel legal argument to attempt to defeat the granting of summary judgment. Finally, the AAA granted the motion without assigning reasons. Therefore, it remains unclear, even at this time, which arguments were actually successful before the arbitration panel and which were not. Thus, it appears Habetz is merely speculating the prescription issue was the ultimately successful defense raised by USF&G.

Even if the prescription defense were, in fact, the successful defense, Ms. Adams, herself, testified the granting of a summary judgment motion in an arbitration proceeding is "very rare." Consequently, Ms. Adams testified she had to continue defending the merits of the claims – and, in doing so, incurred additional fees – until the motion was granted.

The foregoing demonstrates the legal complexities both procedurally and substantively involved in the Eunice Nursing Home arbitration, which required extensive knowledge of construction law, surety law, and arbitration procedures. Ms. Adams has refused to offer opinion testimony as to whether Melancon's actions or inactions breached the standard of care in a case such as this within a unique procedural forum involving a complex and particularized area of the law. This Court is not "so familiar with the standards of practice" in the foregoing such that expert testimony on this issue would not be necessary. Therefore, this Court *of necessity* would require expert testimony on the standard of care required in connection with the Eunice Nursing Home claims. Because Habetz's chosen expert on this matter – Ms. Adams – has declined to offer an

opinion as to the standard of care for purposes of malpractice in the instant case, the record is devoid of expert testimony that would prove both the standard of care in this case and whether Melancon breached a duty of care to Habetz.

Under the foregoing circumstances, this Court concludes Habetz fails to carry its burden on this issue. In failing to designate an expert on this matter, Habetz cannot prove an essential element of its legal malpractice claim with respect to the Eunice Nursing Home matter. Consequently, this Court concludes Melancon's motion for summary judgment seeking dismissal of Habetz's legal malpractice claim in connection with the Eunice Nursing Home arbitration is GRANTED, and the foregoing claim is DISMISSED WITH PREJUDICE.

### 4.    The Brown's Drywall Litigation

In its Third-Party Demand against Melancon, Habetz alleges a claim against Melancon for legal malpractice in Melancon's handling of the Brown's Drywall litigation. Habetz's claim arises from the fact that Brown's Drywall obtained a default judgment against USF&G while USF&G was represented by Melancon.

Again, the initial burden is on the movant here, Melancon, to argue an absence of evidence showing his actions or inactions constitute legal malpractice. Because Habetz bears the ultimate burden of proof on this issue at trial, the burden then shifts to Habetz to rebut Melancon's *prima facie* case.

Melancon seeks dismissal of Habetz's claim on grounds Habetz failed to designate an expert to testify to the standard of care in the Brown's Drywall matter, and that such failure is fatal to this legal malpractice claim. Additionally, Melancon argues his actions in the Brown's Drywall matter do not constitute malpractice. In support of this argument, Melancon states he obtained, by

-23-

telephone, an informal extension of time to respond to Brown's Drywall's petition on behalf of both Habetz *and USF&G* from Sharon Kyle, counsel for Brown's Drywall. Melancon contends he followed up his telephone conversation with Ms. Kyle with a letter, wherein he memorialized their agreement, which included an agreement that Brown's Drywall would take no action, including the taking of a default judgment, without first contacting Melancon. Melancon concedes he failed to state in the letter he represented both Habetz and USF&G, and noted in the letter only that he represented Habetz. Nevertheless, Melancon argues he clearly expected his agreement with Ms. Kyle to cover not only Habetz, but USF&G.

Melancon argues despite the agreement and the letter, Ms. Kyle took a default judgment against USF&G in the amount of $11,932.05. Melancon argues that, before he was terminated by USF&G, he filed a "Petition for Temporary Restraining Order, Preliminary and Permanent Injunction, or Alternatively, Motion for New Trial," in which he sought to set aside the default judgment on grounds it was not taken in good faith and on grounds USF&G had not been permitted to plead its defenses. Melancon contends he was never given an opportunity to remedy the default before USF&G retained the Krebs firm, which agreed to settle the case for $1,800.00 without obtaining a ruling on the motion Melancon had filed. Melancon further argues that, had he been given an opportunity to remedy the default judgment, and had the default judgment been set aside, there would have been no reason to settle the Brown's Drywall matter at that time.

In rebuttal, Habetz argues it intends to use Alberta Adams as an expert to show that a default judgment "is not a good thing" and "something that all counsel should try to avoid on behalf of their clients."[15] Habetz alternatively argues no expert is necessary to prove this claim, because the taking

---

[15] See Deposition of Alberta Adams, attached as exhibit to Habetz's memorandum in opposition to motion for summary judgment,. Doc. 67, at p. 190-91.

-24-

of a default judgment is so "obvious" and "egregious" so as to render expert testimony unnecessary.

This Court has already determined Ms. Adams cannot testify as an expert on the particularized standard of care within surety law and/or the prevailing legal standards in the given area applicable in this case, inasmuch as she has declined to offer any opinion regarding the standard of care in this case or whether Melancon breached the standard of care in these underlying legal matters. Although Ms. Adams might be qualified to render an opinion as to the nature of default judgments in civil litigation – although not necessarily within this locale – it is not necessary she do so with respect to the Brown's Drywall litigation, because – unlike the Eunice Nursing Home arbitration – this Court is familiar with the standards of practice in this community with respect to default judgments and is therefore fully competent to make a determination as to whether Melancon's actions as to the default, constitute legal malpractice, without the necessity of expert testimony. *See Watkins v. Sheppard*, 278 So.2d 890, 892 (La. App. 1st Cir. 1973) (citations omitted); *Muse v. St. Paul Fire and Marine Ins. Co.,* 328 So.2d 698, 702 (La. App. 1st Cir. 1976) (following *Watkins*); *Schlesinger v. Herzog*, 672 So.2d 701, 708 -09 (La. App. 4th Cir. 1996) ("Where the trial court is familiar with the standards of practice in its community, or where the attorney's conduct obviously falls below any reasonable standard of care, the assistance of expert testimony may be unnecessary."), *citing Morgan v. Campbell, Campbell & Johnson,* 561 So.2d 926, 929 (La. App. 2nd Cir.1990).

This Court concludes, however, it *need not* and *should not* make a determination *as to the merits* of Habetz's claim arguing Melancon committed malpractice, because this Court concludes *Habetz fails to satisfy its burden on rebuttal.* All Habetz argues in response to the issue within Melancon's motion is the default judgment against USF&G is "very egregious and plain oversight." Furthermore, Ms. Adams's testimony that default judgments are not "a good thing" is axiomatic.

This Court – which is familiar with the standards of practice in this community – is aware that
default judgments are not desirable. It appears to this Court the more pertinent question is *why* the
default judgment was entered and *how* Melancon responded to the taking of the default judgment.
Melancon has put forth evidence showing he believed - perhaps not unreasonably – that he had been
assured no action, including the taking of a default judgment, would be taken without first consulting
him. The fact that, evidently, Melancon and Kyle differed in their respective understandings as to
the breadth of that assurance, it would seem, does not remove the fact of the assurance having been
given from consideration. Additionally, Melancon challenged the taking of the default judgment by
filing a "Petition for Temporary Restraining Order, Preliminary and Permanent Injunction, or
Alternatively, Motion for New Trial," in which he sought to set aside the default judgment on
grounds it was not taken in good faith and on grounds USF&G had not been permitted to plead its
defenses. Thus, Melancon was actively challenging the taking of the default judgment at the time
he was replaced by Ms. Adams. It is not lost on this Court as well that Ms. Adams was able to settle
the case for $1,800 before the Court ruled on the motion Melancon filed – far less than the
$11,932.05 judgment Brown's Drywall obtained by taking the default judgment – suggesting,
perhaps, that the legal basis for the taking of the default judgment was precarious.

Habetz offers in rebuttal only argument of the obvious, that default judgments are "not a good
thing." This "evidence," however, is insufficient to defeat an otherwise properly supported motion.
Indeed, this Court notes default judgments are taken for various reasons – some legitimate and some
not – against parties on a daily basis. Were this Court to determine that *every* instance in which a
default judgment is taken constitutes legal malpractice, attorneys across this district would be
committing malpractice with alarming frequency. Furthermore, had a default judgment been

*confirmed* against USF&G as a result of Melancon's actions and/or inactions, this Court's conclusion might well be very different. However, without providing specific evidence as to why -- under the facts and circumstances of *this* case – Melancon's actions constitute legal malpractice, Habetz does not satisfy its burden. Merely alleging, generally, that default judgments are not good is not sufficient.

Considering the foregoing, this Court concludes Habetz fails to satisfy its burden on this issue. Although expert testimony is not required to prove this particular legal malpractice claim, this Court concludes Habetz fails to offer any evidence showing Melancon's handling of the Brown's Drywall matter constituted legal malpractice *per se,* as Habetz in effect alleges. Therefore, Melancon's motion for summary judgment seeking dismissal of Habetz's claims against it for legal malpractice in the Brown's Drywall litigation is GRANTED, and the foregoing claim is DISMISSED WITH PREJUDICE.

As this Court grants summary judgment in Melancon's favor on Habetz's claims for legal malpractice, this Court grants summary judgment in Melancon's favor on Habetz's claim for "economic losses incurred equal to the claims being advanced by USF&G," which is merely the specific claim for damages associated with the legal malpractice claims, and this claim is DISMISSED WITH PREJUDICE.

### 5.    The $82,600 Fee Habetz Paid to Melancon

In its Third-Party Demand, Habetz alleges a breach of contract claim for economic losses in the amount of $82,600.00, which Habetz claims it paid Melancon to represent it in the Eunice Nursing Home and Brown's Drywall matters, "of which only portions of said amount were reasonable considering the competency of the work performed." This Court has already concluded

the foregoing claim is actually a tort claim for legal malpractice.

In its motion for summary judgment, Melancon states:

It is "unclear from the Third Party Demand whether [Habetz is] seeking recovery of any portion of this money but if they are, for the reasons stated above, [Habetz] need[s] to present expert testimony to demonstrate which portions of the fees are "unreasonable" and what work was performed that was not competent. Because [Habetz is] foreclosed from producing any such expert testimony, any claims for reimbursement of fees must fail.[16]

In rebuttal, Habetz clarifies the foregoing claim arises from Melancon's failure to adequately represent USF&G, which caused USF&G to retain separate counsel, which breached *a contract to Habetz* to protect Habetz from "exposure" to additional fees. Habetz argues the roughly $82,600 in fees it paid to Melancon are damages incurred pursuant to Article 1994 of the Louisiana Civil Code.[17]

In support of this argument, Habetz attaches the affidavit of Edmund Habetz, wherein Mr. Habetz sets forth a timeline describing the procedural history of the Eunice Nursing Home and Brown's Drywall matters. The focus of the affidavit is that USF&G did not put Habetz on notice it was dissatisfied with the legal services being provided by Melancon before it retained the Krebs firm, a matter that does not appear to be relevant to the instant issue. The only paragraph in the affidavit that arguably relates to Habetz's claim to recover the $82,600 for "breach of contract" damages is the statement that Melancon "breached its contractual obligation to provide USF&G with

---

[16] See Melancon's Motion for Summary Judgment, Doc. 58, at p. 18.

[17] Article 1994 states:

An obligor is liable for the damages caused by his failure to perform a conventional obligation.

A failure to perform results from nonperformance, defective performance, or delay in performance.

LA. CIV. CODE ANN. art. 1994 (West 2008).

-28-

a contractual defense as to the Brown's Drywall lawsuit."[18]

This Court concludes Habetz's proferred evidence is insufficient to defeat Melancon's properly supported motion. Although Melancon does not set forth specific evidence in this portion of its motion for summary judgment, this Court considers the cumulation of evidence set forth in other portions of the motion is sufficient to satisfy Melancon's initial burden of showing the legal services he provided in connection with the Eunice Nursing Home arbitration and Brown's Drywall litigation were not so inadequate, in whole, as to be deemed, on their face, totally deficient. Habetz offers no evidence in rebuttal showing the work was, indeed, so deficient, whether by way of expert testimony or other evidence, as to render those services below the jurisprudential standard, other than Edmund Habetz's statement in his affidavit that Melancon "breached his contractual obligation to provide USF&G with a contractual defense as to the Brown's Drywall lawsuit." This self-serving statement is insufficient to defeat Melancon's otherwise properly supported motion.

Furthermore, Melancon provided legal services to Habetz in connection with the underlying matters. According to Habetz's own claim in its Third-Party Demand, only a "portion" of these legal fees are unreasonable. Habetz fails to identify *which* portion of the fees might be unreasonable, other than the self-serving affidavit of Edmund Habetz.

Considering the foregoing, this Court concludes Habetz fails to satisfy its burden of showing the $82,600 it paid to Melancon in connection with the underlying legal matters was "unreasonable" and thus, not owed. Therefore, Melancon's motion for summary judgment seeking dismissal of Habetz's claim for reimbursement of the $82,600 amount it paid to Melancon in connection with Melancon's representation of Habetz in the underlying legal matters is GRANTED, and the

---

[18] See Affidavit of Edmund Habetz, attached as exhibit to Habetz's response to Melancon's motion for summary judgment, Doc. 58, at ¶20.

foregoing claim is DISMISSED WITH PREJUDICE.

### 6.  The Remaining Claims Alleged in Habetz's Third-Party Complaint

Although Melancon seeks dismissal of Habetz's "Third Party Demand," and, presumably all claims raised therein, Melancon fails to address the remaining "claims" made against it in the Third-Party Demand itself, namely, (1) Habetz's claim for "economic losses in the form of attorneys' fees in having to pursue this claim for indemnity against Melancon;" (2) Habetz's claim for "non-pecuniary damages" in an amount to be determined at trial, "which are general damages as a result of the ordeal;" and (3) Habetz's claim for "economic damages in the form of lost business opportunity."[19] Although Habetz grants no clarity as to whether these "claims" exist separate and apart from the alleged legal malpractice, neither does movant present any argument or basis for dismissal.  Consequently, this Court cannot grant the requested relief on these "claims," and Melancon's motion for summary judgment seeking dismissal of these "claims" is DENIED.  The foregoing "claims" remain pending at this time.[20]

### IV.  Conclusion

Considering the foregoing,

Melancon's motion for summary judgment seeking dismissal of Habetz's legal malpractice claim in connection with the Eunice Nursing Home arbitration is GRANTED for failure of Habetz to carry its burden, and the foregoing claim is DISMISSED WITH PREJUDICE.

---

[19] Habetz also includes in its Third-Party Demand a claim for "economic losses incurred equal to the claims being advanced by USF&G." The Court concludes this claim is simply a specific claim for damages associated with Habetz's claims for legal malpractice and breach of contract (both of which are deemed claims for legal malpractice under the facts of this case). Consequently, because summary judgment is granted herein on the malpractice claims, summary judgment is also GRANTED on this claim for economic damages associated with the malpractice claims.

[20] This Court has concern whether Habetz can prevail on the remaining "claims" given this Court's ruling this date. However, the "claims" have not been addressed in the instant motion, and this Court cannot, therefore, grant the requested relief.

Melancon's motion for summary judgment seeking dismissal of Habetz's claims against it for legal malpractice in the Brown's Drywall litigation is GRANTED for failure of Habetz to carry its burden, and the foregoing claim is DISMISSED WITH PREJUDICE.

Melancon's motion for summary judgment seeking dismissal of Habetz's claim for "economic losses incurred equal to the claims being advanced by USF&G," which is merely the specific claim for damages associated with the legal malpractice claims, is GRANTED, and the foregoing claim is DISMISSED WITH PREJUDICE.

Melancon's motion for summary judgment seeking dismissal of Habetz's claim for reimbursement of the $82,600 amount it paid to Melancon in connection with Melancon's representation of Habetz in the underlying legal matters is GRANTED for failure of Habetz to carry its burden, and the foregoing claim is DISMISSED WITH PREJUDICE.

Melancon's motion for summary judgment seeking dismissal of the following "claims" is DENIED for failure of Melancon to carry his burden: (1) Habetz's claim for "economic losses in the form of attorneys' fees in having to pursue this claim for indemnity against Melancon;" (2) Habetz's claim for "non-pecuniary damages" in an amount to be determined at trial, 'which are general damages as a result of the ordeal;" and (3) Habetz's claim for "economic damages in the form of lost business opportunity," in that due to the continued difficulty in the defense of the claims, USF&G refused to honor its commitment to provide Habetz with bonding services, which resulted in a five-

month period in which Habetz was without bonding services and was unable to bid on jobs.  The foregoing claims remain pending at this time.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _____ day of March, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE